UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
NOVEL COMMODITIES S.A.,     :

             :

       Plaintiff,   :  No. 11-cv-6339 (PGG)
             :  ECF CASE
  v.          :

             :

QBE INSURANCE CORPORATION,  :

             :

       Defendant.  :
------------------------------------------------------------------X

## ANSWER AND COUNTERCLAIM TO THE
## COMPLAINT OF NOVEL COMMODITIES S.A.

Defendant QBE Insurance Corporation ("QBE"), by and through its attorneys,

Clyde & Co. US LLP, as and for an Answer and Counterclaim to the complaint

(hereinafter, the "Complaint") filed by Plaintiff, Novel Commodities S.A. ("Novel"),

states as follows:

  1.  Paragraph 1 of the Complaint constitutes Novel's characterization of the

nature of this action and requires no responsive pleading from QBE. To the extent that a

response is required, QBE admits that the Complaint purports to seek damages for Novel

in excess of $10 million relating to an alleged breach of Novel's trade credit insurance

policy with QBE, but QBE denies that it breached any obligation to indemnify Novel.

QBE respectfully refers all issues of law and contract construction to the Court.

  2.  QBE denies knowledge and information sufficient to form a belief as to

the truth of the allegations contained in paragraph 2 of the Complaint

  3.  QBE admits the allegations contained in paragraph 3 of the Complaint.

4.      The allegations contained in paragraph 4 of the Complaint constitute Novel's allegations regarding the Court's jurisdiction, to which no response is required.

5.      Without admitting or denying the allegations contained in paragraph 5 of the Complaint, QBE submits to personal jurisdiction in this matter.

6.      The allegations in paragraph 6 of the Complaint constitute Novel's allegations regarding the proper venue for this matter, to which no response is required.

7.      QBE denies the allegations contained in paragraph 7 of the Complaint, except admits that on or about October 16, 2009 it issued Trade Credit Insurance Policy DC/8800281/AE (the "Policy") to Access Global Capital LLC *for the account of Novel Commodities S.A.* (emphasis original) ("Access Global"), and that on or around October 16, 2009 it issued Endorsements Nos. 001, 002 and 004 to the Policy.  QBE respectfully refers the Court to the Policy and Endorsements Nos. 001, 002 and 004 for their true, correct and complete terms and conditions.

8.      QBE denies the allegations contained in paragraph 8 of the Complaint, except admits that, pursuant to the terms, conditions, and exclusions of the Policy, QBE provided trade credit insurance to Access Global with respect to Novel's sales to CIA. Arrocera Covadonga ("Covadonga"), provided that the invoice value of such sales did not exceed the Endorsed Credit Limit specified in the Policy Declarations, and subject to an Insured Percentage and a Deductible also specified in the Policy Declarations.  QBE respectfully refers the Court to the Policy for its true, correct and complete terms and conditions.

9.      QBE denies the allegations contained in paragraph 9 of the Complaint, except admits that Article V of the Policy defines Insured Debt in part as "the invoice

value of such goods sold and Dispatched or Services Provided by you arising out of the trade specified in the Declaration that: (a) is owed to you by the Buyer; and (b) does not exceed the Endorsed Credit Limit for the Buyer; and...." QBE respectfully refers the Court to the Policy for its true, correct and complete terms and conditions.

10.     QBE denies the allegations contained in paragraph 10 of the Complaint, except admits that, subject to the terms, conditions and exclusions of the Policy, the Policy as originally issued provided for a Policy Amount (that is, a maximum aggregate limit of liability) of $9,000,000; an Insured Percentage of 95%; an Endorsed Credit Limit (that is, the maximum amount of credit that Access Global was covered for under the Policy) of $10,000,000; and a Deductible (the amount of Insured Loss, as defined in the Policy, that was retained by Access Global for its own account) in the amount of $500,000.  QBE respectfully refers the Court to the Policy for its true, correct and complete terms and conditions.

11.     QBE denies the allegations contained in paragraph 11 of the Complaint, except admits that the Policy Declarations specify CIA. Arrocera Covadonga, Av. Industria No 5, Colonia Santa Clara, 55540 Ecatepec Estado de Mexico, Mexico as the Buyer, and respectfully refers the Court to the Policy for its true, correct and complete terms and conditions.

12.     QBE denies the allegations contained in paragraph 12 of the Complaint, except admits that on or around March 30, 2010 it issued Endorsements Nos. 005 and 006 to the Policy, that Endorsement 005 increased the Policy Amount to $13,500,000 and that Endorsement 006 increased the Endorsed Credit Limit to $15,000,000.  QBE

respectfully refers the Court to Endorsements Nos. 005 and 006 for their true, correct and complete terms and conditions.

13.     QBE denies the allegations contained in paragraph 13 of the Complaint, except admits that on or around April 15, 2010, it issued Endorsement No. 003 to the Policy, which designated UBS-Geneva; BNP Paribas (Suisse) S.A. – Geneve; Banque De Commerce Et De Placements (BCP); and Banque Cantonale Vaudoise (BCV) as Loss Payees under the Policy.  QBE respectfully refers the Court to Endorsement No. 003 for its true, correct and complete terms and conditions.

14.     QBE denies the allegations contained in paragraph 14 of the Complaint, except admits that Article III(3)(b)(1) of the Policy provides that "[QBE] shall pay, subject to the claim complying with the terms of this Policy and subject to any Deductible to be borne by [Access Global], the Insured Percentage of the Insured Loss," and that Article III(3)(b)(2)(b) further provides that "[i]n accordance with the above [QBE] will pay to [Access Global], upon receipt of an executed release of [QBE's] liability (available from [QBE]) and subject to the terms and conditions of the Policy, as follows … (b) in the case where a Protracted Default occurs, within sixty (60) days after [QBE has] received satisfactory proof that the debt exists."  QBE respectfully refers the Court to the Policy for its true, correct and complete terms and conditions.

15.     In response to the allegations in paragraph 15, QBE admits that Novel has paid QBE all premiums due under the Policy.

16.     QBE denies the allegations contained in paragraph 16 of the Complaint, except admits that on September 27, 2010 Novel informed QBE that the amount of $1,374,647.02 under Invoice No. 1910 had not been timely paid by Covadonga.

17.   QBE denies knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph 17 of the Complaint.

18.   QBE denies the allegations contained in paragraph 18 of the Complaint, except admits that on or around February 3, 2011, Access Global submitted a claim to QBE under the Policy in the amount of $12,285,001.02 with respect to 32 invoices that Novel alleged had not yet been paid by Covadonga.  QBE respectfully refers the Court to the Notice of Claim for its true, correct and complete content.

19.   QBE denies knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph 19 of the Complaint.

20.   QBE denies the allegations contained in paragraph 20 of the Complaint, except admits that on or around May 25, 2011, Randall R. West of QBE wrote a letter to James Edward Besch of Access Global (the "May 25, 2011 Letter") in response to Access Global's claim.  QBE respectfully refers the Court to the May 25, 2011 Letter for its true, correct and complete content.

21.   The allegations contained in paragraph 21 of the Complaint relate to the contents of the May 25, 2011 Letter and QBE respectfully refers the Court to the May 25, 2011 Letter for its true, correct and complete content.

22.   QBE admits the allegations contained in paragraph 22 of the Complaint.

23.   QBE denies the allegations contained in paragraph 23 of the Complaint, except admits that on or around July 26, 2011, QBE paid Access Global the amount of $1,160,927.59, which QBE contends is its entire obligation under the Policy.

24.   QBE denies the allegations contained in paragraph 24 of the Complaint.

## CLAIM FOR RELIEF

1.     QBE incorporates its responses to paragraphs 1 through 24 as though fully set forth herein.

2.     QBE denies the allegations in paragraph 2 of the Claim for Relief and asserts as a defense that QBE has complied with its contractual obligations under the Policy, and otherwise respectfully refers all issues of law and contract construction to the Court.

## AS AND FOR A FIRST AFFIRMATIVE DEFENSE

Novel's claims are barred on the grounds that QBE has made payment in full of its obligations under the Policy.

## AS AND FOR A FIRST COUNTERCLAIM
## FOR DECLARATORY JUDGMENT

1.   QBE repeats and realleges the admissions and denials to each and every allegation contained in paragraphs 1 through 24 as though fully set forth herein.

2.   By agreement dated June 8, 2010, Access Global and Novel agreed that Access Global would act as Novel's agent and financial consultant for, *inter alia*, the purpose of procuring and maintaining credit insurance for the account of Novel.  The agreement provides that "Credit Insurance booked on behalf of Novel by Access Global will be administ[ered] by the latter...."

3.   Access Global, as agent for Novel, procured the Policy for Novel with an Endorsed Credit Limit of $10,000,000.  The premium for the Policy was 3% of the Endorsed Credit Limit, or $300,000.

4.  In or around March 2010, James Besch of Access Global requested on behalf of Novel an increase of the Policy's Endorsed Credit Limit to $17,500,000.

5.  Mr. Besch explained to QBE's underwriter that such an increase in the Endorsed Credit Limit was necessary so that Novel could comply with bank covenants and fulfill pending rice orders.

6.  QBE declined to increase the Endorsed Credit Limit to $17,500,000, as it represented a greater risk than QBE was willing to assume.  QBE instead agreed to increase the Endorsed Credit Limit to $15,000,000, and issued Endorsement No. 006 to the Policy, effective April 1, 2010, reflecting this increase.  Novel tendered additional premium of $62,500, which represented 3% of the increase in the Endorsed Credit Limit, prorated for the remainder of the policy term, in relation to this change.

7.  Throughout the life of the Policy, Access Global requested several other Endorsed Credit Limit increases on behalf of Novel.  QBE declined these increases – and the corresponding additional premiums – as they represented greater risk than QBE was willing to assume.

8.  "Endorsed Credit Limit" is defined in Article V of the Policy as "the maximum amount of credit that [Access Global is] covered for under this Policy and shall not include any sales tax, value added tax, or any other taxes."

9.  Article III(6)(a)(2) of the Policy ("Co-Insurance") provides that Access Global "shall retain for [its] own account … any indebtedness of [Covadonga] to [Access Global] that exceeds the Endorsed Credit Limit."

10. At various times relevant to this dispute, the indebtedness of Covadonga to Novel exceeded the Endorsed Credit Limit of $15,000,000.

11. Pursuant to Article III(6)(a)(2) of the Policy, QBE has no obligation for indebtedness of Covadonga to Novel that exceeds the Endorsed Credit Limit of $15,000,000.

12. Despite the absence of any further contractual obligation beyond amounts already paid, Novel contends that QBE is required to pay Novel $10,821,740.43 with respect to such indebtedness.

13. An actual and justiciable controversy has thus arisen between QBE and Novel concerning the coverage of Novel's claim under the Policy.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff QBE respectfully requests that this Court:

(1) Deny Novel's Claim for Relief in its entirety;

(2) Find and declare that QBE's obligations under the Policy with respect to Access Global's claim were met in full by QBE's July 26, 2011 payment to Novel in the amount of $1,160,927.59;

(3) Award QBE its costs and disbursements for this action, including attorneys' fees; and

(4) Grant QBE such other and further relief as is just and proper.

QBE reserves the right to amend this Answer and to add additional defenses or counterclaims based on the facts disclosed through discovery.

**DATED:**  October 28, 2011                    QBE INSURANCE CORPORATION

By its attorneys:

Michael A. Knoerzer (MK8438)
Michael.Knoerzer@clydeco.us

Victoria L. Melcher (VM0725)
Victoria.Melcher@clydeco.us

CLYDE & CO US LLP
The Chrysler Building
405 Lexington Avenue
16th Floor
New York, New York 10174
Telephone: (212) 710-3900
Facsimile: (212) 710-3950