UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NOVEL COMMODITIES S.A.,

Plaintiff,

- v -

QBE INSURANCE CORPORATION,

Defendant.

No. 11-cv-6339 (PGG)

ECF CASE

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR RECONSIDERATION OF THE COURT'S MARCH 30, 2013 ORDER**

SULLIVAN & WORCESTER LLP
Michael T. Sullivan
Andrew T. Solomon
Karen E. Abravanel
1633 Broadway, 32nd Floor
New York, New York 10019
Telephone: (212) 660-3000
Facsimile: (212) 660-3001

*Attorneys for Plaintiff*
*Novel Commodities S.A.*

On March 30, 2013, this Court issued an order (dkt. no. 39) (the "Order") denying the cross motions for summary judgment made by Plaintiff Novel Commodities SA ("Novel") and defendant QBE Insurance Corporation ("QBE"). Novel now respectfully moves for reconsideration of that part of the Order that denied Novel's motion.

**SUMMARY**

Noting that the parties' dispute "turns on the application of the 'Endorsed Credit Limit' provision, and what point in time the buyer's outstanding debt is calculated," Order at 4, the Court concluded that "[b]ecause the Policy language is ambiguous on this issue, neither side is entitled to summary judgment based on the plain language of the Policy." Order at 9. The Court then considered extrinsic evidence proffered by QBE, found it lacking, and implicitly invited the parties to submit further extrinsic evidence—in particular, expert evidence—at trial.

We respectfully submit that the Court overlooked three key matters of fact and law raised on Novel's motion:

First, the Court overlooked Novel's argument that the "Endorsed Credit Limit" provision is an exclusionary clause that purports to limit coverage under the trade credit insurance policy issued by QBE (the "Policy"). Exclusionary clauses are accorded a strict and narrow construction under New York law. To avoid coverage, QBE bears the heavy burden of establishing that the exclusion effected by the "Endorsed Credit Limit" provision was stated in clear and unmistakable language, and that QBE's interpretation of the provision is the only reasonable one. The Court's finding that the provision is "ambiguous" means that QBE has failed to satisfy this burden.

Second, interpretation of the Endorsed Credit Limit provision does not require consideration of extrinsic evidence of the parties' intent. Ambiguities found in an exclusionary

clause are construed strictly against the insurer. In other words, as held by a recent Second Circuit decision: "Where the plain language of a policy permits more than one reasonable reading, a court must adopt the reading upholding coverage." *VAM Check Cashing Corp. v. Fed. Ins. Co.*, 699 F.3d 727, 732 (2d Cir. 2012) (emphasis supplied).

Third, even if Novel's motion were theoretically resolvable by consideration of extrinsic evidence, the evidence submitted by QBE is insufficient to defeat summary judgment. It is not enough for QBE to submit evidence that merely "supports" its interpretation of the Policy; rather, QBE must show that there is no other reasonable interpretation. QBE failed to submit such evidence. Moreover, discovery was completed prior to the parties' motions, and neither side has identified an expert witness. QBE was required to lay bare its proof in opposition to Novel's motion. QBE's failure to proffer any additional evidence in opposition to Novel's motion makes clear that it has nothing more to submit to the fact finder.

Accordingly, Novel is entitled to summary judgment.

## ARGUMENT

### I. STANDARD OF REVIEW

"On a motion for reconsideration, the moving party must demonstrate that the court failed to consider controlling decisions or factual matters that were put before it on the underlying motion, and which, had they been considered, might reasonably have led to a different result." *Ansoumana v. Gristede's Operating Corp.*, 255 F. Supp. 2d 197, 198 (S.D.N.Y. 2003) (internal quotation omitted). Reconsideration is properly granted to correct clear error, to avoid manifest injustice, or to consider newly-available evidence. *WTC Captive Ins. Co., Inc. v. Liberty Mut. Fire Ins.*, 537 F. Supp. 2d 619, 623 (S.D.N.Y. 2008).

Novel respectfully submits that the Court overlooked controlling authority and certain facts and misconstrued certain arguments, which compel a different result.

## II. NOVEL IS ENTITLED TO SUMMARY JUDGMENT

Advancing its interpretation of two Policy-defined terms, "Endorsed Credit Limit" and "Insured Debt," QBE asserted that the Policy does not cover losses relating to invoices created when Novel's customer, CIA Arrocera Covadonga ("Covadonga"), owed more than $15 million. Novel argued that pursuant to the plain meaning of the Policy, the challenged transactions were not excluded from coverage.

### A. The "Endorsed Credit Limit" Provision Is An Exclusionary Clause

In support of its motion, Novel argued that the "Endorsed Credit Limit" provision is an exclusionary clause, because the provision purports to limit coverage under the Policy. In opposition, QBE tried to cabin the issue as a matter of "coverage" rather than a limit or exclusion. But this argument is one of form over substance: the issue is effect, and here the effect of QBE's interpretation is to limit, to exclude from coverage certain transactions that would otherwise fall square within the Policy's insuring clause. The Second Circuit rejected QBE's semantic argument 18 years ago in *Stonewall Ins. Co. v Asbestos Claim Mgmt. Corp*., 73 F.3d 1178, 1205 (2d Cir. 1995), finding that "the exclusionary effect of policy language, not its placement, controls allocation of the burden of proof."

The Order does not address Novel's argument regarding the exclusionary effect of the "Endorsed Credit Limit" provision. As a result, the Court did not interpret the "Endorsed Credit Limit" provision according to the standard applicable to exclusionary clauses. This standard imposes a heavy burden of proof on the insurer, because—as this Court held in a recent decision—"the 'law governing the interpretation of exclusionary clauses in insurance policies is highly favorable to insureds':

> '[W]henever an insurer wishes to exclude certain coverage from its policy obligations, it must do so in clear and unmistakable language. Any such exclusions or exceptions from policy

> coverage must be specific and clear in order to be enforced. They are not to be extended by interpretation or implication, but are to be accorded a strict and narrow construction. Indeed, before an insurance company is permitted to avoid policy coverage, it must satisfy the burden which it bears of establishing that the exclusions or exemptions apply in the particular case, and that they are subject to no other reasonable interpretation'….

*Brice v. State Farm Fire and Cas. Co.*, 761 F. Supp. 2d 96, 99 (S.D.N.Y. 2010) (quoting *Pioneer Tower Owners Ass'n v. State Farm Fire & Cas. Co.*, 12 N.Y.3d 302, 307, 880 N.Y.S.2d 885, 908 N.E. 2d 875 (2009)); *see also Utica Mut. Ins. Co. v. Prudential Prop. & Cas. Ins Co.*, 103 A.D.2d 60, 63, 477 N.Y.S.2d 657 (2d Dep't 1984), *aff'd*, 64 N.Y.2d 1049, 489 N.Y.S.2d 704, 478 N.E.2d 1305 (1985) ("[I]t is the insurer which has the burden of proof to establish that claim in encompassed by an exclusion in a policy . . . and any limitation in coverage must be described in clear and explicit language.") (internal citations omitted); discussion in Novel's Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment (dkt. no. 22) at 15-18 and Novel's Reply Memorandum in Further Support of Motion for Summary Judgment (dkt. no. 37) at 3-4 and cases cited therein.

Applying this correct standard to the interpretation of the "Endorsed Credit Limit" provision, the Court's determination that this provision is "ambiguous" necessarily means that QBE failed to satisfy its burden, and mandates a ruling in Novel's favor. No further analysis is required.

### B. Interpretation Of An Exclusionary Clause Does Not Require Consideration Of Extrinsic Evidence

The Court also overlooked controlling decisions providing that consideration of extrinsic evidence is unnecessary for the interpretation of an exclusionary clause. For example, in a recent case concerning an insurer's assertion of a policy exclusion, the Second Circuit affirmed summary judgment for the insured without any consideration of extrinsic evidence. *See VAM*

*Check Cashing*, 699 F.3d at 735.[1] *VAM Check Cashing* concerned interpretation of a provision with an exclusionary effect—"Robbery"—that was embedded in the policy's insuring clause, but defined elsewhere in the insurance policy. Similarly, in the instant action, as this Court noted, the parties' dispute focuses on the meaning of "Insured Debt" and "Endorsed Credit Limit," terms embedded in the "Insuring Clause," but defined elsewhere in the Policy. Order at 8.

The *VAM Check Cashing* court found that neither party's proffered interpretation of the defined term "Robbery" was definitive. 699 F.3d at 731. The court then stated:

> *The effect of ambiguity*. With Federal's textual arguments exhausted, the ambiguity remains. As mentioned above, New York follow the maxim of *contra proferentem* in insurance cases: where the plain language of a policy permits more than one reasonable reading, a court must adopt the reading upholding coverage. *See Haber v St. Paul Guardian Ins. Co.*, 137 F.3d 691, 697-98 (2d Cir. 1998) (describing New York law). As the Supreme Court of Arkansas memorably put it, in language long ago embraced by the New York Court of Appeals,
>
> > "If [the insurer] meant to exclude liability ..., why did it not say so in such plain language that a wayfaring man, though a fool, might not be deceived thereby? It would appear a simple thing for a great institution, such as [the insurer], to write a clause in its policies exempting itself from such liability in plain and simple language."
>
> *Equitable Life Assurance Soc'y of U.S. v. Dyess*, 109 S.W.2d 1263, 1265 (Ark. 1937) quoted in *Hartol Prods. Corp. v. Prudential Ins. Co. of Am.*, 290 N.Y. 44, 47 N.E.2d 687, 690-91 (N.Y. 1943).

*Id*. at 732-33. The Court continued:

> Because the plain text of the Policy does not resolve this case, VAM must prevail if it has provided us a reasonable reading permitting recovery. It has. . . . [T]his interpretation is at least as plausible a reading of the language as that provided by Federal.

*Id*. at 733.

---

[1] *VAM Check Cashing* was decided on November 7, 2012, after submission of the parties' cross-motions for summary judgment. Novel, however, brought the decision to the Court's attention under cover of letter dated November 28, 2012. QBE responded on December 3, 2012.

In reality, *VAM Check Cashing* merely continued the established principles regarding efforts to exclude or limit coverage, as set forth in Section II.A, *supra*. And, of course, the Second Circuit's holding in *VAM Check Cashing* implicitly rejects QBE's effort to escape liability.

Certainly, a number of decisions predating *VAM Check Cashing* hold that textual ambiguity may open the door to extrinsic evidence. We respectfully submit that this is not—or is no longer—a correct statement of New York law, at least in the context of exclusionary or limiting language. As this Court has held, "clear and unmistakable" is another way of saying "unambiguous." *See Brice*, 761 F. Supp. 2d at 102 (granting summary judgment in favor of insurer because claimed loss "is clearly and unambiguously excluded from coverage") (emphasis added); *see also Pioneer Tower*, 12 N.Y.3d at 307, 880 N.Y.S.2d 885, 908 N.E.2d 875 (affirming summary judgment in favor of insured because "we cannot say that the event that caused plaintiff's loss was unambiguously excluded from the coverage of this policy") (emphasis added). Accordingly, if a court finds that exclusionary or limiting policy language is ambiguous (as this Court determined in the Order), it logically follows that the language is not "clear and unmistakable." *Accord In re Axis Reins. Co. REFCO Related Ins. Litig.*, No. 07-07924, 2010 WL 1375712, at *3 n.2 (S.D.N.Y. Mar. 7, 2010) (report and recommendation of special master Capra adopted by 2010 WL 1374891 (S.D.N.Y. Apr. 5, 2010) ("If the exclusion itself must be absolutely clear, it is difficult to argue that an insurer can escape liability when there is ambiguity on whether the exclusion is even part of the insurance contract.").

In any event, those authorities that allow for the consideration of extrinsic evidence simply provide that such evidence "may" be considered. *See, e.g., Parks Real Estate Purchasing Group v. St. Paul Fire and Marine Ins. Co.*, 472 F.3d 33, 43 (2d Cir. 2006) ("Once a court

concludes that an insurance provision is ambiguous, 'the court may accept any available extrinsic evidence to ascertain the meaning intended by the parties during the formation of the contract.'") (quoting *Morgan Stanley Group, Inc. v. New England Ins. Co.*, 225 F.3d 270, 275-276 (2d Cir. 2000)) (emphasis added). Even if the broader rule applied to exclusionary or limiting language, and we submit that it does not, the scant evidence that QBE provided—a single, ambiguous email written one year after Policy issuance—hardly makes a compelling case for a jury's review.

Accordingly, based on *VAM Check Cashing* and the Court's finding that the text of the Policy does not unambiguously exclude the challenged transactions from coverage, Novel is entitled to summary judgment without resort to extrinsic evidence.[2]

---

[2] There can be no reasoned debate that Novel has offered a plausible interpretation of the Policy. As set out in Novel's Memorandum in Opposition to QBE's Motion for Summary Judgment (dkt. no. 30) at 6-7, a comparison of two potential scenarios makes the point:

Scenario One:

| **Date** | **Sale** | **Payment** | **Covadonga Debt** |
|---|---|---|---|
| April 1, 2010 | $15,000,000 | | $15,000,000 |
| April 2, 2010 | | $15,000,000 | $0 |
| April 3, 2010 | $15,000,000 | | $15,000,000 |
| April 4, 2010 | | | [Covadonga files for bankruptcy] |

Under this scenario, both QBE and Novel would agree that the Policy covers the April 3, 2010 sale to Covadonga and the Policy would respond.

Scenario Two:

| **Date** | **Sale** | **Payment** | **Covadonga Debt** |
|---|---|---|---|
| April 1, 2010 | $15,000,000 | | $15,000,000 |
| April 2, 2010 | $15,000,000 | | $30,000,000 |
| April 3, 2010 | | $15,000,000 | $15,000,000 |
| April 4, 2010 | | | [Covadonga files for bankruptcy] |

Under this scenario, the Covadonga Debt on April 3, 2010 is exactly the same as under Scenario One. QBE would argue, however, that the April 2, 2010 invoice is forever excluded from coverage, leaving Novel with a $15,000,000 uninsured loss. But this distinction simply makes

**C. QBE's Extrinsic Evidence Was Insufficient To Defeat Summary Judgment**

Even if extrinsic evidence were properly considered on Novel's motion, Novel would still be entitled to summary judgment. QBE's burden in opposing Novel's motion is not merely to show evidence—or the prospect of evidence—tending to show that QBE's interpretation was reasonable, because that is not the relevant question. Rather, given the textual ambiguity of the "Endorsed Credit Limit" provision, QBE is required to proffer evidence tending to show that its interpretation of the provision was the only reasonable interpretation—and, necessarily, that Novel's interpretation is was unreasonable. *See VAM Check Cashing*, 699 F.3d at 732; *see also* discussion at Section II.B, *supra*. QBE failed to submit such evidence.

In this regard, it is important to note that the parties completed discovery many months ago, before submission of their respective motions; and neither has designated an expert witness or proffered an expert report or any other potential source of extrinsic evidence. As such, we respectfully submit that it was not "premature [for the Court] to conclude that there are not other aids to construction that might resolve the ambiguity in the Policy." Order at 12.

That no other relevant extrinsic evidence exists is confirmed or, at a minimum, legally presumed by the summary judgment procedures. As the party opposing Novel's motion for summary judgment, QBE was required to "lay bare [its] its proof in evidentiary form and raise an issue of fact sufficient to send to the jury." *Weiss v. La Suisse, Société D'Assurances Sur La Vie*, 293 F. Supp. 2d 397, 408 (S.D.N.Y. 2003) (citation omitted); *see also Kelly v. Chase Manhattan Bank*, 717 F. Supp. 227, 233 (S.D.N.Y. 1989) ("Discovery now being largely

---

no economic sense. If such a nonsensical and idiosyncratic result were intended by QBE, it was QBE's duty, as insurer, to set that out in clear and unmistakable language in the Policy. That the Policy fails to do so is essentially admitted in QBE's memoranda of law, where its attorneys engraft additional language on the policy terms in order to convince the Court what QBE meant when it issued the Policy.

complete, the plaintiff is expected to lay bare his proof in opposition to the defendant's motion."). Further, a party opposing a motion for summary judgment "cannot withhold evidence in his possession when his opponent makes a motion for summary judgment claiming that he will introduce the missing evidence at trial." *Weiss*, 293 F. Supp. at 408. In other words, having asserted that extrinsic evidence proved its case, QBE was required to submit to the Court all such evidence in its opposition to Novel's motion. QBE's failure to submit anything beyond the "very limited extrinsic evidence offered at summary judgment," *see* Order at 10, indicates that QBE has no additional evidence in its possession.

**CONCLUSION**

For all the above reasons, we respectfully request that the Court grant Novel's motion for reconsideration and thereupon grant summary judgment in Novel's favor.

Dated: New York, New York
April 11, 2013

Respectfully submitted,

SULLIVAN & WORCESTER LLP

By: /s/ Michael T. Sullivan
Michael T. Sullivan
Andrew T. Solomon
Karen E. Abravanel
1633 Broadway
New York, New York 10019
Telephone: (212) 660-3000
Facsimile: (212) 660-3001
msullivan@sandw.com
asolomon@sandw.com
kabravanel@sandw.com

*Attorneys for Plaintiff*
*Novel Commodities S.A.*