UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------- X
                                               :
NOVEL COMMODITIES S.A.,               :
                                               :            No. 11-cv-6339 (PGG)
                 Plaintiff,               :
                                               :                  ECF CASE
     - v -                              :
                                               :
QBE INSURANCE CORPORATION,    :
                                               :
               Defendant.            :
------------------------------------------- X

# REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR RECONSIDERATION OF THE COURT'S MARCH 30, 2013 ORDER

SULLIVAN & WORCESTER LLP
Michael T. Sullivan
Andrew T. Solomon
Karen E. Abravanel
1633 Broadway, 32nd Floor
New York, New York 10019
Telephone: (212) 660-3000
Facsimile: (212) 660-3001

*Attorneys for Plaintiff*
*Novel Commodities S.A.*

Novel[1] respectfully submits this reply memorandum of law in further support of its motion for reconsideration (the "Reconsideration Motion") of the Court's March 30, 2013 Order (dkt. no. 42), and in response to Defendant QBE Insurance Corporation's Opposition to Plaintiff's Motion for Reconsideration (dkt. no. 43) ("QBE's Opp. Mem.").

## SUMMARY

To be effective under New York law, an exclusion or limitation of coverage in an insurance policy must be stated in "clear and unmistakable" language. Here, the Court has already held that the relevant Policy language is ambiguous, so it necessarily follows that the language is *not* stated in clear and unmistakable language. The Court has also already held that according to QBE's interpretation of the relevant Policy language, invoices that would otherwise fall squarely within the Policy's insuring clause are "excluded from coverage." *See* Order at 2. If the ambiguous policy language has an exclusionary effect, then such language must be construed against QBE, and in favor of Novel. No amount of extrinsic evidence, moreover, can alter this conclusion. The Court should have granted summary judgment in Novel's favor.

Novel therefore seeks reconsideration of the Court's Order on the grounds that the Court overlooked three key issues of fact and law:

1. QBE, by its application of the Policy's "Endorsed Credit Limit" provision, seeks to limit Policy coverage and exclude certain transactions from its obligation to indemnify. But QBE has failed to demonstrate: (a) that *the text of the Policy*, in "clear and unmistakable" language, for which there is "no other reasonable interpretation,'' so limits coverage; (b) that the language on which QBE relies is "subject to no other reasonable interpretation"; and (c) that QBE's is the "only fair interpretation" of that language.

2. Resolution of Novel's motion for summary judgment does not properly depend on extrinsic evidence. If the Policy text for which there is "no other reasonable interpretation" does not "clearly and unmistakably" exclude the transactions, then those transactions cannot be excluded from coverage as a matter of law. There

---

[1] Unless otherwise defined, capitalized terms shall have the same meaning ascribed to them in Novel's opening brief.

    remains no ambiguity for which extrinsic evidence is required or may be considered.

 3. Even if the issue could be resolved by consideration of extrinsic evidence, the scant evidence submitted by QBE is insufficient to require a jury's review.

In opposition, QBE fails to address the merits of any of Novel's arguments, and instead responds to arguments not advanced, distinctions not made, and circumstances not present. Novel seeks to avoid the expense of a trial that it respectfully submits is unnecessary, particularly since Novel, as a small business whose staff all reside in Europe, stands to bear a disproportionate share of the burden of the trial. Accordingly, Novel is entitled to summary judgment.

## ARGUMENT

**I. NOVEL DOES NOT ADVANCE A NEW ARGUMENT**

  In opposition to the pending motion for reconsideration, QBE criticizes Novel for supposedly advancing a new argument about QBE's failure to satisfy its burden of proof regarding the exclusionary effect of the "Endorsed Credit Limit" provision. QBE is wrong. In its original motion for summary judgment, Novel argued that QBE could not prove its case using the Policy text alone. Novel specifically argued in its summary judgment submissions that because QBE sought to limit or exclude coverage, it was required to "identify specific language in the Policy that is 'clear and unmistakable,' subject to 'no other reasonable interpretation,' and that is the 'only fair construction' for the interpretation advanced by QBE." *See* Novel's Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment (dkt. no. 22) ("Novel's S.J. Mem.") at 16.

  QBE also quibbles (and misses the point): it asserts that "Novel never contended in its motion for summary judgment submissions that the Endorsed Credit Limit *definition* was an exclusion." *See* QBE's Opp. Mem. at 4 (emphasis added). This is form over substance. As the

2

Court recognized, the parties' coverage dispute concerns QBE's *application* of the "Endorsed Credit Limit" provision, and not the *definition* of the term. See Order at 4 ("As discussed in more detail below, the parties' coverage dispute turns on the application of the 'Endorsed Credit Limit' provision . . ."). To this end, Novel expressly and repeatedly argued in its summary judgment submissions that Article III.6.a(2) of the Policy—the provision on which QBE relied to resist Novel's claim[2]—was an exclusionary clause.[3] See Novel's S.J. Mem. at 15-18; *see also* Novel's Reply Memorandum in Further Support of Motion for Summary Judgment (dkt. no. 37) ("Novel's S.J. Reply Mem.") at 3-4. Accordingly, the Court should reject QBE's suggestion that Novel's argument is new.

QBE next argues that the "Endorsed Credit Limit" provision, like the Policy's "Co-Insurance" provision into which "Endorsed Credit Limit" is incorporated, "merely defines and limits an aspect of coverage and is therefore *not* an exclusionary provision." See QBE's Opp. Mem. at 5 (emphasis in original). But that is not consistent with the position that QBE took when it originally denied coverage of Novel's claim. In its denial of coverage letter, QBE determined the amount it was willing to pay under the Policy, "[a]fter *excluding* (i) the value of invoices (or portions of the invoice value) issued when the QBE Balance column exceeds [the Endorsed Credit Limit] . . ." See Complaint (dkt. no. 1) at Ex. F at 1 (emphasis added). Moreover, as set forth in Novel's summary judgment submissions, semantic distinctions are meaningless. New York law requires that "*any* limitation in coverage must be described in clear and explicit language." See Novel's Reply Mem. at 4 (quoting *Utica Mut. Ins. Co. v. Prudential*

---

[2] *See, e.g.,* QBE's Counterclaim (dkt. no. 7) ¶ 11 ("Pursuant to Article III (6)(a)(2) of the Policy, QBE has no obligation for the indebtedness of Covadonga to Novel that exceeds the Endorsed Credit Limit of $15,000,000.").

[3] In relevant part, this provision provides that Novel "shall retain for its own account . . . (2) any indebtedness of [Covadonga] to [Novel] that exceeds the Endorsed Credit Limit." See Order at 3.

3

*Prop. & Cas. Co.*, 103 A.D.2d 60, 63, 477 N.Y.S.2d 657 (2d Dep't 1984) (emphasis added), *aff'd*, 64 N.Y.2d 1049, 489 N.Y.S.2d 704 (1985)). The "Endorsed Credit Limit" provision—which, under QBE's interpretation, limits the coverage offered under the Policy—must be strictly construed.

QBE also continues to misread *Consolidated Edison Co. v. Allstate Ins. Co.*, 98 N.Y.2d 208, 219, 746 N.Y.S.2d 622, 774 N.E.2d 687 (2002). That case does not reject the broad principle for which Novel has cited *Stonewall Ins. Co. v. Asbestos Mgmt. Corp.*, 73 F.3d 1178 (2d Cir. 1995): namely, that the heading under which a disputed policy provision appears is irrelevant. *See* Novel's Memorandum of Law in Support of Plaintiff's Motion for Reconsideration of the Court's March 30, 2013 Order (dkt. no. 42) ("Novel's Opening Mem.") at 3; *see also* Novel's S.J. Mem. at 15 n.14; Novel's S.J. Reply Mem. at 3-4. Rather, *Consolidated Edison* simply rejects the specific factual finding of *Stonewall*, that the particular term "occurrence," in itself, operates as an exclusion. *See Consolidated Edison*, 98 N.Y.2d at 219, 746 N.Y.S.2d 622, 774 N.E.2d 687 ("In our view, the contention that the requirement of an 'accident' or 'occurrence' itself operates as an exclusion is unpersuasive."); *accord Foster v. Westchester Fire Ins. Co.*, No. 09-1459, 2012 WL 2402895, at *6 n.3 (W.D. Pa. June 26, 2012) ("Moving defendants correctly point out that the Court of Appeal of New York has limited the holding of *Stonewall*, but its reasoning is nonetheless persuasive.") (citing *Consolidated Edison*).

## II.    *VAM CHECK CASHING* ACCURATELY PORTRAYS NEW YORK LAW; BUT IN ANY EVENT, IT IS CONTROLLING

As noted, Novel has consistently asserted that New York law requires policy text to clearly and unmistakably set forth limitations or exclusions from coverage. Contrary to QBE's argument, therefore, Novel does not maintain that the recent holding of *VAM Check Cashing Corp. v. Fed. Ins. Co.*, 699 F.3d 727, 732 (2d Cir. 2012), advances a new proposition of law. As Novel noted in its opening brief, "[i]n reality, *VAM Check Cashing* merely continued the

4

established principles regarding efforts to exclude or limit coverage, as set forth in Section II.A. [of Novel's Opening Mem.]."[4]

Thus, QBE is incorrect when it asserts that Novel has put forth *VAM Check Cashing* as "inconsistent with New York law as it currently exists." *See* QBE's Opp. Mem. at 2. New York law is and has been the same: an insurer may not exclude or limit coverage unless clearly and unmistakably authorized by the text of the policy. Indeed, as Novel noted in its opening brief, this Court has previously taken note of this rule:

> The New York Court of Appeals has noted that the "law governing the interpretation of exclusionary clauses in insurance policy is highly favorable to insureds":
>
>> "[W]henever an insurer wishes to exclude certain coverage from its policy obligations, it must do so in clear and unmistakable language. Any such exclusions or exceptions from policy coverage must be specific and clear in order to be enforced. They are not to be extended by interpretation or implication, but are to be accorded a strict and narrow construction. Indeed, before an insurance company is permitted to avoid policy coverage, it must satisfy the burden which it bears of establishing that the exclusions or exemptions apply in the particular case, and that they are subject to no other reasonable interpretation."

*Brice v. State Farm Fire and Cas. Co.*, 761 F.Supp.2d 96, 99 (S.D.N.Y. 2010) (Gardephe, J.) (quoting *Pioneer Tower Owners Ass'n v. State Farm Fire & Cas. Co.*, 12 N.Y.3d 302, 307, 880 N.Y.S.2d 885 (2009)).[5]

---

[4] Novel also noted that "[c]ertainly, a number of decisions predating *VAM Check Cashing* hold that textual ambiguity may open the door to extrinsic evidence. We respectfully submit that this is not—or is no longer—a correct statement of New York law, at least in the context of exclusionary or limiting language." Novel's Opening Mem. at 6.

[5] *Accord*, *In re Axis Reins. Co. REFCO Related Ins. Litig.*, No. 07-07924, 2010 WL 1375712, at *3 n.2 (S.D.N.Y. Mar. 7, 2010) (report and recommendation of special master Capra adopted by 2010 WL 1374891 (S.D.N.Y. Apr. 5, 2010) ("If the exclusion itself must be absolutely clear, it is difficult to argue that an insurer can escape liability when there is ambiguity on whether the exclusion is even part of the insurance contract.").

Alternatively, if the *VAM Check Cashing* case *is* considered to reflect an intervening change of law, there can be no dispute that it is controlling, and that it mandates summary judgment in Novel's favor.[6]

## III.  QBE FAILS TO PROFFER SUFFICIENT EVIDENCE

Even assuming arguendo that extrinsic evidence is properly considered in the interpretation of the "Endorsed Credit Limit" provision, summary judgment is still proper for two reasons.

First, to defeat summary judgment, QBE faced a daunting burden. It was required to proffer evidence demonstrating that it could satisfy its burden of proof, in this case, to show that the Policy "clearly and unmistakably" excluded the transactions and that the relevant provisions were "subject to no other reasonable interpretation." This it did not do.

As the Court noted, the only probative evidence that QBE proffered was a single email from a Novel employee, sent almost a full year after QBE sold the Policy. In the Court's view, this email merely "tends to suggest" that QBE's Policy interpretation is correct. *See* Order at 9-10. In other words, as the Court found, that email "presents a choice among reasonable inferences." *See* Order at 11. But to withstand summary judgment, it was not enough for QBE to show that its interpretation was one among several reasonable interpretations of the "Endorsed Credit Limit" provision. Instead, QBE was required to proffer evidence showing that the provision "is subject to no other reasonable interpretation." *See Brice,* 761 F.Supp.2d at 99. Significantly, QBE does not address this argument in its opposition.

---

[6] QBE would distinguish *VAM Check Cashing* on the grounds that "[n]either party offered extrinsic evidence to support its interpretation of the Policy language." *See* QBE's Opp. Mem. at 3. The opinion does not so state. Rather, as QBE notes, the *VAM Check Cashing* opinion "did not identify or address any extrinsic evidence." *Id.* Nor did that court even suggest that such evidence should be requested or considered.

6

Second, even though QBE promises that it "will adduce additional evidence at trial," *see* QBE's Opp. Mem. at 7, it provides no details. Novel respectfully submits that no such evidence exists. What witness or document could QBE possibly offer to show that its interpretation of the "Endorsed Credit Limit" provision is the *only reasonable interpretation* of the Policy language? If QBE had such evidence, it stands to reason that QBE would have submitted it in opposition to Novel's motion for summary judgment. Indeed, QBE was required to lay bare its proof respecting the issues, *i.e.*, that the Policy clearly and unmistakably excluded the transaction and that there was no other reasonable interpretation of the challenged Policy text. *See* Novel's Opening Mem. at 8. Yet, other than a single, inconclusive email, QBE provided no such proof.

In sum, QBE failed in its burden. It was not enough for QBE to provide evidence that "tended" to support its interpretation. Rather, QBE was required to provide evidence showing that its interpretation was the only reasonable one. Indeed, even now, QBE is apparently unable to identify any further evidence in support of its position. Summary judgment should issue for Novel.

## **CONCLUSION**

For all the above reasons, we respectfully request that the Court grant Novel's motion for reconsideration and thereupon grant Novel's motion for summary judgment.

Dated: New York, New York
April 25, 2013

Respectfully submitted,

SULLIVAN & WORCESTER LLP

By: /s/ Michael T. Sullivan
    Michael T. Sullivan
    Andrew T. Solomon
    Karen E. Abravanel
1633 Broadway
New York, New York 10019
Telephone: (212) 660-3000
Facsimile: (212) 660-3001
msullivan@sandw.com
asolomon@sandw.com
kabravanel@sandw.com

*Attorneys for Plaintiff*
*Novel Commodities S.A.*

8