UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NOVEL COMMODITIES S.A.,

                     Plaintiff,

v.

QBE INSURANCE CORPORATION,

                     Defendant.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: May 1, 2013

**ORDER**

11 Civ. 6339 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

       Plaintiff Novel Commodities S.A. ("Novel") has moved for reconsideration of this Court's March 30, 2013 Order (the "Order") (Dkt. No. 39) denying the parties' cross-motions for summary judgment (Dkt. Nos. 21 and 26) Familiarity with the Order is presumed. For the reasons stated below, Novel's motion for reconsideration will be denied.

## BACKGROUND

       Novel purchased a trade credit insurance policy ("Policy") from Defendant QBE Insurance Corporation (the "Insurer"). The Policy protected Novel in the event that a third-party failed to pay Novel for goods supplied. The third-party failed to pay and Novel sought recovery under the Policy. This litigation ensued after the Insurer denied coverage for most of Novel's claim.

       The parties' cross-motions for summary judgment present contradictory interpretations of key Policy language. Novel contends that the Policy provides coverage for all invoices not paid by the third-party, as long as the trade credit was provided during the policy period and before the third-party had committed any default, up to a limit of $15 million. The Insurer contends that any credit Novel advanced at a time when the third-party owed Novel $15 million or more is not covered.

In denying the parties' cross-motions for summary judgment, the Court found that, "[t]he key provisions of the Policy, particularly the definitions of 'Insured Debt' and 'Endorsed Credit Limit,' do not unambiguously provide for the non-cumulative, day-to-day, invoice-by-invoice approach advocated by the Insurer." (Order at 8) The Court further found that Novel had not "cited any language in the Policy demonstrating that the 'Endorsed Credit Limit' analysis is conducted at the end of the Policy term, as opposed to when an unpaid invoice was issued, when the buyer first defaults, at the time of each subsequent default, when the claim is made, or at some other point." (Id. at 8-9) Given that the relevant Policy terms are not unambiguous, and because the extrinsic evidence offered by the parties at summary judgment was not conclusive, the Court concluded that it could not rule as a matter of law. (Id. at 2)

In its motion for reconsideration, Novel contends that "the Court overlooked three key matters of fact and law raised in Novel's motion":

> 1. "[T]he Court overlooked Novel's argument that the 'Endorsed Credit Limit' provision is an exclusionary clause that purports to limit coverage under the [Policy]." "Exclusionary clauses are accorded a strict and narrow construction under New York law," and the Insurer did not meet its burden of demonstrating that its interpretation "is the only reasonable one."
>
> 2. "[I]nterpretation of the Endorsed Credit Limit provision does not require consideration of extrinsic evidence. . . . Ambiguities found in an exclusionary clause are construed strictly against the insurer. . . . 'Where the plain language of the policy permits more than one reasonable reading, a court must adopt the reading upholding coverage.'"
>
> 3. "[E]ven if Novel's motion was theoretically resolvable by consideration of extrinsic evidence, the evidence submitted by the Insurer is insufficient to defeat summary judgment."

(Novel Reconsideration Br. (Dkt. No. 42) at 1-2 (quoting VAM Check Cashing Corp. v. Fed. Ins. Co., 699 F.3d 727, 732 (2d Cir. 2012); Novel Reconsideration Reply Br. (Dkt. No. 45) at 1-2) (emphasis in original)).

2

## DISCUSSION

I. **LEGAL STANDARD**

A motion for reconsideration is "an 'extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources,'" In re Initial Public Offering Sec. Litig., 399 F. Supp. 2d 298, 300 (S.D.N.Y. 2005) (quoting In re Health Mgmt. Sys., Inc. Sec. Litig., 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000)), and may be granted only where a court has overlooked "'controlling decisions or factual matters that were put before it on the underlying motion'" and which, if examined, might reasonably have led to a different result. Eisemann v. Greene, 204 F.3d 393, 395 n.2 (2d Cir. 2000) (quoting Shamis v. Ambassador Factors Corp., 187 F.R.D. 148, 151 (S.D.N.Y. 1999)). "Reconsideration should not be granted where the moving party seeks solely to relitigate an issue already decided; in addition, the moving party may not 'advance new facts, issues or arguments not previously presented to the Court.'" Christoforou v. Cadman Plaza N., Inc., No. 04 Civ. 08403 (KMW), 2009 WL 723003, at *7 (S.D.N.Y. Mar. 19, 2009) (quoting Shamis, 187 F.R.D. at 151).

II. **ANALYSIS**

A. **Novel's Arguments that the "Endorsed Credit Limit" Provision is an Exclusionary Clause**

Novel argues that "[t]he Order does not address Novel's argument regarding the exclusionary effect of the 'Endorsed Credit Limit' provision. As a result, the Court did not interpret the 'Endorsed Credit Limit' provision according to the standard applicable to exclusionary clauses." (Novel Reconsideration Br. at 3) Novel never argued in its summary judgment briefing that the "Endorsed Credit Limit" provision was an exclusionary clause,

however. Having not made this argument before, Novel may not raise it now.[1] "A motion for reconsideration is not an opportunity for a losing party to advance new arguments to supplant those that failed in the prior briefing of the issue." Fredericks v. Chemipal, Ltd., No. 06 Civ. 966 (GEL), 2007 WL 1975441, at *1 (S.D.N.Y. July 6, 2007); see also E.E.O.C. v. Fed. Express Corp., 268 F. Supp. 2d 192, 199 (E.D.N.Y. 2003) ("Under Local Rule 6.3, a party may not advance new facts, issues or arguments not previously presented to the Court." (internal quotation omitted)).

### B. Novel's Argument that the Insurer Submitted Insufficient Extrinsic Evidence to Defeat Summary Judgment

At summary judgment, Novel offered no extrinsic evidence of the Policy's meaning (Order at 9), and thus it did not rebut in any fashion the extrinsic evidence offered by the Insurer. Novel now contends, however, that the Insurer's extrinsic evidence was "insufficient to defeat summary judgment. It is not enough for [the Insurer] to submit evidence that merely 'supports' its interpretation of the Policy; rather [the Insurer] must show that there is no other reasonable interpretation." (Novel Reconsideration Br. at 2)

In support of its argument that the Insurer was "required to proffer [extrinsic] evidence tending to show that its interpretation of the provision was the only reasonable interpretation," Novel cites only VAM Check Cashing Corp. v. Federal Ins. Co., 699 F.3d 727, 732 (2d Cir. 2012). (See Novel Reconsideration Br. at 8)

---

[1] Novel does not dispute that it failed to argue at summary judgment that the "Endorsed Credit Limit" provision is an exclusionary clause. Novel argues, instead, that it contended that a different provision -- the Co-Insurance Provision" found in Article III.6.a(2) of the Policy -- is an exclusionary clause. (Novel Reconsideration Reply Br. at 3) But Novel now relies on an argument that the Endorsed Credit Limit provision is an exclusionary clause. This argument was not made before and thus cannot be raised in a motion for reconsideration. Christoforou, 2009 WL 723003, at *7.

4

In VAM Check Cashing Corp., the Second Circuit concluded that an insurance policy's definition of "robbery" was ambiguous in the context of that case. VAM, 699 F.3d at 730-32. The court did not address the use or significance of extrinsic evidence; apparently the parties did not offer extrinsic evidence. The case turns, instead, on the maxim contra proferentem, which requires that "where the plain language of a policy permits more than one reasonable reading, a court must adopt the reading upholding coverage. Id. at 732 (citing Haber v. St. Paul Guardian Ins. Co., 137 F.3d 691, 697-98 (2d Cir. 1998). Nothing in VAM states that where the policy language is ambiguous, an insurer seeking to defeat an insured's summary judgment motion must offer extrinsic evidence tending to show that its interpretation of the policy is "the only reasonable interpretation." (Novel Reconsideration Br. at 8)

The Second Circuit's resolution of the dispute in VAM confirms the impropriety of summary judgment here. In applying the contra proferentem maxim, the Court noted that "[b]ecause the plain text of the Policy does not resolve this case, VAM must prevail if it has provided us a reasonable reading permitting recovery. It has." Id. at 733.

Here, as the Court explained in its Order, Novel has not provided a reasonable or coherent reading of the Policy language at issue. It is entirely unclear from Novel's presentation when the "Endorsed Credit Limit" analysis is to be conducted: at the end of the Policy term, when an unpaid invoice was issued, when the buyer first defaulted, at the time of each subsequent default, when the claim is made, or at some other point. (Order at 8-9) Because Novel has not offered a "reasonable reading" of the Policy's relevant terms, it is not entitled to summary judgment.

## CONCLUSION

For the reasons stated above, Novel's motion for reconsideration (Dkt. No. 41) is denied. The Clerk of the Court is directed to terminate the motion.

Dated: New York, New York
      May 1, 2013

SO ORDERED.

_____
Paul G. Gardephe
United States District Judge