UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
                                       :

NOVEL COMMODITIES S.A.,         :

                      :         No. 11-cv-6339 (PGG)
          Plaintiff,      :

                      :           ECF CASE
     - v -                :

                      :

QBE INSURANCE CORPORATION,    :

                      :

         Defendant.      :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**NOVEL'S OPPOSITION TO QBE'S MOTION TO EXCLUDE EVIDENCE OF
THE SCOPE OF NOVEL'S OTHER INSURANCE**

SULLIVAN & WORCESTER LLP
Michael T. Sullivan
Andrew T. Solomon
Karen E. Abravanel
1633 Broadway, 32nd Floor
New York, New York 10019
Telephone: (212) 660-3000
Facsimile: (212) 660-3001

*Attorneys for Plaintiff
Novel Commodities S.A.*

Plaintiff Novel Commodities S.A. ("Novel") respectfully submits this memorandum of law in opposition to Defendant QBE Insurance Corporation's ("QBE") Motion to Exclude Evidence of the Scope of Novel's Other Insurance (dkt. no. 48) (the "Motion").

## PRELIMINARY STATEMENT

By the Motion, QBE seeks to exclude all evidence of the scope and terms of Novel's other credit insurance, referring to insurance provided by Zurich Insurance Group ("Zurich") and AIG/National Union Fire Insurance Company of Pittsburgh, PA ("AIG"), but with a particular focus on a credit insurance policy issued by Euler Hermes American Credit Indemnity Company ("Euler"), bearing the number 398148R (the "Euler Policy").  Preliminarily, Novel has not and does not intend to offer evidence respecting insurance provided by either Zurich or AIG.  QBE's basis for the Motion with respect to those insurers is unknown.

Euler, however, represents a slightly different issue.  Since QBE's February 22, 2012 deposition of Novel's representative, James Besch of Access Global Capital LLC ("Access Global"), QBE has known that both Besch and Novel understood that credit insurance provided by Euler would "roll over" and cover new Covadonga debt as older debt was repaid, without the requirement that overall debt first fall below any applicable credit limit.  With that understanding, Besch requested, and QBE confirmed, that QBE's credit insurance would follow the terms and conditions of Euler's credit insurance.

Thus, the Euler Policy, and Novel's performance thereunder, are probative of the parties' intent regarding the policy in dispute (the "QBE Policy").  Further, the parties have stipulated that, for several years before the issuance of the QBE Policy, QBE provided excess insurance on top of the coverage provided by Euler.  As a result, QBE is fully familiar with the scope and terms of the insurance coverage provided by Euler, and QBE undoubtedly has a copy (if not several copies) of the Euler Policy in its files.  The Motion should be denied.

## ARGUMENT

**I.    THE EULER POLICY IS EVIDENCE OF THE PARTIES' INTENT REGARDING THE MEANING OF THE QBE POLICY**

In its opening brief, QBE argues that the Euler Policy "is entirely irrelevant to the interpretation of the QBE Policy" because the QBE Policy "on its face does not follow form to [Novel's] other insurers' policies, but is a standalone policy written on QBE's own Specific Account Policy Form QBTC-003 (10-05)." *See* QBE's Br. at 4 (dkt. no. 49).  In other words, QBE seeks to exclude the Euler Policy because the Euler Policy is not identical to the QBE Policy, and is not expressly referenced in the QBE Policy.  QBE's Br. at 4 (dkt. no. 49).  This view of the relevance of the Euler Policy is overly restrictive and shortsighted.   More to the point, policy differences, if any, are properly the subject of cross-examination, and not a sufficient basis for exclusion.

Novel will show at trial that, during the negotiation of QBE's first policy as primary insurer, for the policy period March 1, 2009 – June 30, 2009, Novel (and its agent, Access Global) requested and received QBE's confirmation that QBE would follow the terms and scope of coverage provided by Euler.  In particular, James Besch of Access Global will testify that QBE told him the insurance provided by QBE would, like the insurance provided by Euler, "roll-over," meaning that it would cover newer transactions as older debts were paid down.  *See, e.g.,* Novel's Trial Ex. 43 (Transcript of the Deposition of James Besch) at 79:20-80:2 ("Wayne [Besch] told us that the cover would roll over, as it did with Muller [sic] and historically in the past.").

Indeed, Novel will also show that the parties avoided lengthy negotiation of this policy, as well as the QBE Policy in dispute (issued soon thereafter for the policy period October 1, 2009-September 30, 2010), precisely because the parties all knew about the terms of the Euler Policy and agreed to build upon those terms.  *See, e.g., id.* at 57:11-16 ("QBE had knowledge as

2

to what the primary policy covered under the Muller [sic] terms and conditions of the Muller [sic] policy.  So when Muller [sic] exited, there wasn't a whole lot of negotiation, other than the cover amount, the limit."); *see also id.* at 71:20-21 ("Wayne [Bayer] knew what we needed, and we trusted him to give us what we needed.").  As such, since the parties' understanding of the terms of the QBE Policy derived from their understanding of the terms of the Euler Policy, the Euler Policy is clearly relevant.

QBE also argues in its opening brief that, even if the Euler Policy itself were admitted into evidence, it would be impermissible for a witness to offer an opinion concerning the legal obligations of the parties under that Policy.  *See* QBE's Br. at 4.  As set forth above, however, Novel does not seek to establish the parties' legal obligations under the Euler Policy, and will not offer any legal conclusions about the scope of coverage under the Euler Policy.  Instead, Novel only seeks to offer the Euler Policy, and the parties' understanding of the terms of that Policy, as evidence of the parties' intent concerning the meaning of the terms of the QBE Policy.  The jury may properly consider such evidence.  *See, e.g.,* Richard A. Lord, 11 Williston on Contracts § 32:7 (4th ed. 2008) ("Ordinarily, the circumstances surrounding the execution of a contract may always be shown and are relevant to a determination of what the parties intended by the words they chose.").

## II.   QBE WILL NOT BE PREJUDICED IF THE EULER POLICY IS ADMITTED INTO EVIDENCE

QBE also seeks to exclude the Euler Policy on the grounds of alleged prejudice, since Novel did not produce the Euler Policy during discovery.  This complaint rings hollow, because QBE has always known about the Euler Policy.

As the parties have stipulated, during the years 2007-2008, QBE provided excess insurance to Novel, over the primary insurance coverage provided by Euler.  *See* Proposed Joint Pretrial Order at Ex. A ¶ 9 (dkt. no. 54-1).  As the excess insurer, QBE doubtless obtained the

Euler Policy documentation (and QBE has not asserted otherwise).  The record is clear that one of the primary insurance policies accepted by QBE was the same Euler Policy included on Novel's exhibit list: Novel has included on its exhibit list a QBE excess insurance policy that expressly refers to the Euler Policy by number.  *See* Novel's Trial Ex. 4 (Policy Declaration for QBE Top-Up Account Policy No. DC/8800150/AE) at Item 5 (describing "Policy Structure" as "Top Up Specific Account Trade Credit Policy, Excess of Policy #398148R issued by Euler Hermes ACI as of December 1, 2007").  This copy of the QBE excess insurance policy was produced by QBE.  *See id.*  Accordingly, there can be no dispute that QBE received and reviewed the Euler Policy, and that QBE has a copy of this Policy in its own files.

Further, until Novel decided to designate the Euler Policy as a trial exhibit, Novel had no obligation to produce the Euler Policy to QBE.  QBE served on Novel document requests that sought "[a]ll insurance policies" covering the risk of Novel's sales to Covadonga, but Novel expressly objected to those requests to the extent they sought the production of documents "that are already in the possession, custody, or control of QBE."  *See* QBE's Trial Ex. GG (Novel's Objections and Responses to QBE's First Document Request) at 2.  QBE neither challenged this objection nor sought to compel production of the policies issued by Euler.  Nor did QBE renew its request for these documents at or following the deposition of Mr. Besch, who testified at length about the parties' understanding of the terms and conditions of the primary insurance coverage offered by Euler.  *See* Section I, *supra*.  QBE cannot now claim to be surprised by the introduction at trial of a document QBE has always had, and which Novel had no obligation to produce.

**CONCLUSION**

For the foregoing reasons, the Motion should be denied.

Dated: New York, New York
        May 14, 2013

Respectfully submitted,

SULLIVAN & WORCESTER LLP

By: /s/ Michael T. Sullivan
     Michael T. Sullivan
     Andrew T. Solomon
     Karen E. Abravanel
1633 Broadway
New York, New York 10019
Telephone: (212) 660-3000
Facsimile: (212) 660-3001
msullivan@sandw.com
asolomon@sandw.com
kabravanel@sandw.com

*Attorneys for Plaintiff*
*Novel Commodities S.A.*