

# SULLIVAN & WORCESTER

Sullivan & Worcester LLP
1633 Broadway
New York, NY 10019

T 212 660 3000
F 212 660 3001
www.sandw.com

May 18, 2013



Docket + File

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/19/13

By Facsimile: (212) 805-7986

The Honorable Paul G. Gardephe
United States District Court
Southern District of New York
40 Foley Square, Room 2204
New York, New York 10007

Re:   Novel Commodities S.A. v. QBE Insurance Corporation, 11 Civ. 6339

Dear Judge Gardephe:

    We represent Novel in the above-referenced action. Pursuant to the Court's request at the pretrial conference on May 17, 2013, we write to provide the Court with additional authorities regarding two points. First, QBE, as the insurer, bears the burden of proof as to the construction of the ambiguous terms of the insurance policy at issue in this action (the "Policy"). Second, to the extent the Court disagrees and determines that the burden of showing coverage rests with Novel, the Court may properly instruct the jury that, if the extrinsic evidence offered at trial does not resolve the ambiguity, the principle of contra profenterem should be applied in Novel's favor.

    Novel also respectfully attaches proposed revised requests to charge and a verdict sheet that reflect the authorities set forth in this letter.

## I.   QBE bears the burden of proof because the Court has already found the disputed policy language ambiguous.

    At the pretrial conference, the Court requested additional briefing as to whether the policy language at issue in this action may be deemed an "exclusion" or a "coverage term," on the grounds that the resolution of this issue would determine the proper allocation of the burden of proof in this action. On this point, Novel has argued, and continues to maintain, that QBE's application of the Policy's "Endorsed Credit Limit" provisions constitute an exclusionary clause, which purports to limit Policy coverage and exclude certain transactions that would otherwise fall squarely within the Policy's insuring clause. *See, e.g.*, discussion in Novel's Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment (dkt. no. 22) at 15-18 and Novel's Reply Memorandum in Further Support of Motion for Summary Judgment (dkt. no. 37) at 3-4 and cases cited therein.

    However, Novel respectfully submits that, now that the Court has determined that the relevant policy language is ambiguous, the allocation of the burden of proof no longer depends on whether this language is an "exclusion" or a "coverage term." Under New York law, where

BOSTON   NEW YORK   WASHINGTON, DC

The Honorable Paul G. Gardephe
Page 2
May 18, 2013

the terms of an insurance policy are ambiguous, "it is the insurer's burden to prove that the construction it advances is not only reasonable, but also that it is the only fair construction of the language," viewed "through the eyes of the 'average [person] on the street.'" *Boggs v. Comm. Mut. Ins. Co.*, 220 A.D.2d 973, 974, 632 N.Y.S.2d 870 (3d Dep't 1995); *Harrington v. Am. Mut. Ins. Co.*, 223 A.D.2d 222, 228, 645 N.Y.S.2d 221 (4th Dep't 1996) (same); *Venigalla v. Penn Mut. Ins. Co.*, 130 A.D.2d 974, 975, 515 N.Y.S.2d 939 (4th Dep't 1987) (same); *see also Antoine v. City of New York*, 56 A.D.3d 583, 584, 868 N.Y.S.2d 688 (2d Dep't 2008) ("where a policy's terms are ambiguous, the insurer can prevail only if it can demonstrate 'not only that its interpretation is reasonable but that it is the only fair interpretation'") (citations omitted); *City of New York v. Evanston Ins. Co.*, 39 A.D.3d 153, 156, 830 N.Y.S.2d 299 (2d Dep't 2007) (same).

Indeed, even if the resolution of the "exclusion" or "coverage term" issue were still required, because the policy language is ambiguous, QBE would still bear the burden of proving that there is no coverage. The general principle that an insured bears the burden of proving that a loss is covered only applies in situations where the language of a policy defines coverage in "clear and unambiguous" language. If the policy's test for coverage is ambiguous, however, then the burden falls upon the insurer to prove that the loss is *not* covered. As one court explained:

> Where the language of the policy creates an objective test defining coverage in clear and unambiguous language, the burden is on the plaintiff to establish that the facts bring the event within the coverage. . . .
>
> If there is an issue of fact as to the meaning of the language, or the test is subjective, the burden is on the carrier on the basis of the principle that every ambiguity will be resolved against the carrier.

*Mobil Oil Corp. v. Reliance Ins. Co.*, 332 N.Y.S.2d 532, 535 (Sup. Ct. N.Y. Cty. 1971), *aff'd*, 39 A.D.2d 839, 333 N.Y.S.2d 747 (1st Dep't 1972); *see also General Accident Ins. Co. of Am. v. Manchester*, 116 A.D.2d 790, 792 (3d Dep't 1986) ("If there is an issue of fact as to the meaning of language used in an insurance policy, the burden of proof is on the insurer to establish that the facts do not bring the event within the policy's coverage.").

To that end, it is not surprising that the cases cited by the Court, which address the distinction between "coverage" and "exclusion," do not involve the interpretation of ambiguous policy language. For example, in *Consolidated Edison Co. of New York, Inc. v. Allstate Ins. Co.*, 98 N.Y.2d 208, 774 N.E.2d 687 (2002), the Court of Appeals only considered whether the alleged loss was the result of an "accident" or an "occurrence" as those terms were defined by the policy; neither party raised an issue regarding the *meaning* of the terms "accident" or "occurrence." Similarly, in *Planet Insurance Co. v. Bright Bay Classic Vehicles, Inc.*, 75 N.Y.2d 394, 398 (1990), there was no dispute as to the meaning of the relevant policy language – the policy applied only to "Autos held by the Insured for rental on a short term basis (less than twelve months)." The issue, rather, was whether the language limiting coverage to only those automobiles rented for less than twelve months constituted an exclusion or a coverage term. *Id.*

The Honorable Paul G. Gardephe
Page 3
May 18, 2013

at 400-402. The court in *NGM Insurance Co. v. Blakely Pumping Co.*, 593 F.3d 150, 154-55 (2d Cir. 2010), also did not find any ambiguity regarding the meaning of the terms "Hired Auto" and "Non-Owned Auto" as defined in the policy; the sole issue in that case was whether these definitions constituted exclusions. And in *Atlantic Casualty Co. v. Value Waterproofing Inc.*, No. 11-civ.-7565 (DLC), 2013 WL 152854, at *10 (S.D.N.Y. Jan. 15, 2013), the meaning of the policy classifications regarding covered types of property damage was not at issue: the only question for the court was whether the classifications defined the scope of coverage or were exclusions to coverage. *Id.*

For these reasons, QBE bears the burden of proving that its interpretation of the disputed policy language is the only fair construction, and, accordingly, that there is no coverage for Novel's claimed loss.

## II. If the Court finds that the burden rests with Novel, the Court may properly instruct the jury that, if the evidence does not resolve the ambiguity, the jury may apply the rule of contra profenterem.

If, however, the Court determines that Novel bears the burden of proof with respect to showing coverage under the Policy, then the Court may instruct the jury that if it cannot resolve the ambiguity in the Policy, the jury may apply the rule of contra profenterem in Novel's favor.

The Second Circuit has stated: "[I]f on remand the extrinsic evidence sheds no light on the second ambiguity or 'does not yield a conclusive answer,' the district court should apply contra proferentem." *Morgan Stanley Group Inc. v. New England Ins. Co.*, 225 F.3d 270, 280 (2d Cir. 2000) (quoting *McCostis v. Home Ins. Co.*, 31 F.3d 110, 113 (2d Cir. 1994)). Following this rule, the Michigan Court of Appeals has explained: "If the jury is unable to determine what the parties intended after considering all relevant extrinsic evidence, the jury should apply the rule that ambiguities should be construed against the drafter—the rule of contra proferentem—to resolve the issue against the drafter." *Wellman v. McCullough*, No. 294394, 2011 WL 2022940, at *5 (Mich. App. May 24, 2011). *Accord, Lomree, Inc. v. Pan Gas Storage, LLC*, 499 Fed. Appx. 417, 424-25 (6th Cir. 2012) (if at trial the evidence remains insufficient to ascertain parties' intent, the fact finder could then correctly apply the doctrine of contra proferentem); *Swift & Co. v. Elias Farms, Inc.*, 539 F.3d 849, 854 (8th Cir.2008) ("A jury should be instructed to consider the rule that ambiguous agreements are construed against the drafter only if it is unable to determine the intent of the parties based on all of the evidence."); *Tigg Corp. v. Dow Corning Corp.*, 962 F.2d 1119, 1127 (3d Cir. 1992) (contra proferentem should be applied when "the jury [is] unable to ascertain the intention of the parties from the evidence in the case").[1]

---

[1] In *Tigg*, the trial court charged as follows:

> If you, Members of the Jury, are unable to ascertain the intention of the parties from the evidence in the case, you may refer to a rule of interpretation of contracts; that a contract may be interpreted adversely to the party that drafted or wrote the contract.

*Id.* at 1127.

The Honorable Paul G. Gardephe
Page 4
May 18, 2013

In an often cited opinion, the Supreme Court of Michigan explained the practical basis for this protocol. *See Klapp v. United Ins. Group Agency, Inc.*, 663 N.W.2d 447, 456 (Mich. 2003). The court's analysis has been applied in the federal courts. *See, e.g., Warner v. DSM Pharma Chemicals North America, Inc.*, Nos. 1:07-cv-302, 1:07-cv-312, 2010 WL 298307, at *3 (W.D. Mich. Jan. 19, 2010); *Stryker Corp. v. XL Ins. America, Inc.*, No. 4:01-CV-157, 2006 WL 1997142, at *16 (W.D. Mich. July 14, 2006).

The federal court in *Warner* quoted *Klapp's* explanation that the rule is a tie-breaker to be employed when the jury cannot otherwise resolve an ambiguity:

> [I]f the language of a contract is ambiguous, and the jury remains unable to determine what the parties intended after considering all relevant extrinsic evidence, the jury should only then find in favor of the nondrafter of the contract pursuant to the rule of contra proferentem. In other words, the rule of contra proferentem should be viewed essentially as a "tie-breaker," to be utilized only after all conventional means of contract interpretation, including the consideration of relevant extrinsic evidence, have been applied and found wanting.

*Warner*, 2010 WL 298307, at *3

In this regard, *Stryker* went on to rely upon *Klapp's* explanation that contra proferentem is a "tie-breaker:"

> [Contra proferentem] is a rule of legal effect, rather than a rule of legal interpretation, because its purpose is not to render more accurate or more perfect a jury's understanding of the meaning of the contract, but is merely to ascertain the winner and the loser in connection with a contract whose meaning has eluded the jury despite all efforts to apply conventional rules of interpretation.

*Stryker*, at *16.

Consistent with this authority, the jury in this action should be instructed that, if upon hearing all of the evidence, it cannot resolve the ambiguities, then it should apply the rule of contra proferentem and find for Novel.

The Honorable Paul G. Gardephe
Page 5
May 18, 2013

Respectfully submitted,

/s/

Michael T. Sullivan

Direct line: 212-660-3024
msullivan@sandw.com

Enclosure

cc: Michael W. Gramer, Law Clerk to Hon. Paul G. Gardephe (via-email)
    Michael A. Knoerzer (via e-mail)
    Stephen M. Kennedy (via e-mail)
    Victoria L. Melcher (via e-mail)

**Novel Commodities SA v. QBE Insurance Corp., 11 CV 6339 (PGG)**

Plaintiff's Proposed Instruction: Revised May 18, 2013

# 12

## BURDEN OF PROOF

QBE bears the burden of proof to establish by a preponderance of the evidence that the parties intended that the Policy either exclude or not cover or the transactions in dispute.

The party with the burden of proof on any given issue has the burden of proving every disputed element of its claim to you by a preponderance of the evidence. If you conclude that the party bearing the burden of proof has failed to establish its claim by a preponderance of the evidence, you must decide against that party on the issue you are considering.

# 12 B

## BURDEN OF PROOF: REASONABLE AND ONLY FAIR CONSTRUCTION

When an ambiguity in an insurance policy exists, the insurer, in this case QBE, bears the burden of establishing that the construction it advances is not only reasonable but also is the only fair construction viewed through the eyes of the average person on the street. It is QBE's burden to prove by a preponderance of the evidence that its interpretation of the insurance policy is fair and reasonable and is the only fair construction. If you conclude that QBE's interpretation is reasonable, but not the only fair construction, then you must find for Novel.

# 14

## **BREACH OF CONTRACT**

The parties' dispute turns on the term "Endorsed Credit Limit" and the application of that term to other provisions of the Policy, including the Policy's "Insuring Clause," the Policy's definition of "Insured Debt," and the Policy's "Co-Insurance" provision. As mentioned, I have already determined that these provisions are ambiguous. By ambiguous, I mean that these Policy provisions are reasonably subject to more than one meaning.

You are now asked to determine what the parties intended by these terms at the time the Policy issued on October 16, 2009.

In seeking to interpret the Policy, you must keep in mind certain rules. The intent of the parties to a contract is determined by considering the relationship of the parties, what they said, what they did, and all of the surrounding circumstances. One party's secret, unexpressed intent is irrelevant; you may only consider the intent expressed by words and acts. When interpreting the language of the Policy, you should give the Policy's words their plain and ordinary meaning; an interpretation that leads to absurd results should be avoided. All parts of the Policy must be read together to determine the Policy's meaning. You should adopt an interpretation of the Policy that gives meaning to every provision or term.

# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
:
NOVEL COMMODITIES S.A.,            :
:       No. 11-cv-6339 (PGG)
Plaintiff,       :
:       ECF CASE
- v -                 :
:
QBE INSURANCE CORPORATION,         :
:
Defendant.      :
:
----------------------------------------X

## PLAINTIFF NOVEL COMMODITIES S.A.'S *REVISED* PROPOSED VERDICT SHEET

Members of the Jury:

Please follow the instructions below and answer the questions. Your decision on all questions must be unanimous; that is, you must agree on the answer to a question.

These questions ask you to determine if Defendant QBE Insurance Corporation ("QBE") was required to indemnify Plaintiff Novel Commodities S.A. ("Novel") under Trade Credit Insurance Policy No. DC/8800281/AE (the "Policy"), for 21 unpaid invoices.

The parties agree that Novel issued these invoices between April 19, 2010 and August 12, 2010, at a time when its customer, CIA Arrocera Covadonga, owed Novel more than $15,000,000.

1. Has QBE proven, by a preponderance of the evidence, that the parties intended on October 16, 2009 that the Policy would not indemnify Novel for losses relating to any and all of Covadonga's unpaid invoices (or part of any invoices) for sales made at a time when Covadonga owed Novel more than $15 million?

Yes _____          No_____

*If your answer is "Yes," I direct you to return a verdict for QBE*

*If your answer is "No," please answer the next question.*

2. If your answer to question 1 is "Yes," has QBE proven, by a preponderance of the evidence, that their interpretation of the policy is reasonable and their interpretation is only fair interpretation of the policy?

Yes _____          No_____

*If your answer to question 2 is "No," I direct you to return a verdict for Novel.*

*If your answer question 1 is "No" <u>and</u> your answer to question 2 is "Yes," I direct you to return a verdict for QBE*

## **VERDICT**

_____ We find for the plaintiff, Novel Commodities, SA. (you need not concern yourself with the amount of judgment. That will be determined by the Court)

_____ We find for the defendant, QBE Insurance Company.

When you have completed this form, please have your foreperson sign it.

_____

2

Jury Foreperson

Dated: May 18, 2013

SULLIVAN & WORCESTER LLP

By: /s/ _____
Michael T. Sullivan
Andrew T. Solomon
Karen E. Abravanel
1633 Broadway, 32nd Floor
New York, New York 10104
Telephone: (212) 660-3000
Facsimile: (212) 660-3001

*Attorneys for Plaintiff*
*Novel Commodities S.A.*