USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: ______________
DATE FILED: May 20, 2013

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NOVEL COMMODITIES S.A.,

Plaintiff,

v.

QBE INSURANCE CORPORATION,

Defendant.

**ORDER**

11 Civ. 6339 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

In this action, Plaintiff Novel Commodities S.A. ("Novel") seeks recovery on a trade credit insurance policy ("Policy") issued by Defendant QBE Insurance Corporation (the "Insurer"). Under certain circumstances, the Policy protects Novel from losses in the event that a Mexican company – CIA. Arrocera Covadonga ("Covadonga") – fails to pay Novel for rice Novel supplied. Covadonga defaulted on its payment obligations to Novel, and Novel now seeks recovery under the Policy. This litigation ensued after the Insurer denied coverage for most of Novel's claim.

The Court denied the parties cross-motions for summary judgment in an order dated March 30, 2013 (Dkt. No. 39), and denied Novel's motion for reconsideration in a May 1, 2013 order. (Dkt. No. 59) Familiarity with these decisions is presumed.

In their cross-motions for summary judgment, the parties presented conflicting interpretations of key Policy language. Novel contends that the Policy provides coverage for all invoices not paid by Covadonga, as long as the trade credit was provided during the policy period and before Covadonga had committed any default, up to a limit of $15 million. The Insurer contends that any credit Novel advanced at a time when Covadonga owed Novel $15 million or more is not covered. (Dkt Nos. 21, 26) In essence, the Insurer argues that an invoice-

by-invoice analysis must be conducted to determine whether the $15 million limit had been exceeded at the time the relevant invoice was issued, while Novel contends that the Policy calls for a rolling or cumulative analysis which looks at the amount of credit outstanding when Covadonga fails to make a required payment.

In denying the parties' cross-motions for summary judgment, the Court found that, "[t]he key provisions of the Policy, particularly the definitions of 'Insured Debt' and 'Endorsed Credit Limit,' do not unambiguously provide for the non-cumulative, day-to-day, invoice-by-invoice approach advocated by the Insurer." (Dkt. No. 39 at 8) The Court further found that Novel had not "cited any language in the Policy demonstrating that the 'Endorsed Credit Limit' analysis is conducted at the end of the Policy term, as opposed to when an unpaid invoice was issued, when the buyer first defaults, at the time of each subsequent default, when the claim is made, or at some other point." (Id. at 8-9) Given that the relevant Policy terms are not unambiguous, and because the extrinsic evidence offered by the parties at summary judgment was not conclusive, the Court concluded that it could not rule as a matter of law. (Id. at 2)

In its motion for reconsideration, Novel contended that the Court had erred in not treating the Endorsed Credit Limit provision as an "exclusionary clause." Novel contended that ambiguities in exclusionary clauses are "construed strictly against the insurer," and that "'[w]here the plain language of the policy permits more than one reasonable reading, a court must adopt the reading upholding coverage.'" (Novel Reconsideration Br. (Dkt. No. 42) at 1-2 (quoting VAM Check Cashing Corp. v. Fed. Ins. Co., 699 F.3d 727, 732 (2d Cir. 2012); Novel Reconsideration Reply Br. (Dkt. No. 45) at 1-2) (emphasis in original)).

The Court denied Novel's motion for reconsideration, in part because Novel had not argued in its summary judgment briefing that the "Endorsed Credit Limit" provision is an

exclusionary clause. Having not made this argument before, Novel improperly raised it on reconsideration. (Dkt. No. 59 at 3 (citing Christoforou v. Cadman Plaza N., Inc., No. 04 Civ. 08403 (KMW), 2009 WL 723003, at *7 (S.D.N.Y. Mar. 19, 2009) The Court also noted that Novel had not offered a "reasonable reading [of the Policy] permitting recovery." See VAM Check Cashing Corp. v. Federal Ins. Co., 699 F.3d 727, 733 (2d Cir. 2012).

Trial in this matter begins today with jury selection, and the Court must now resolve issues of burden of proof and other aspects of the jury charge. The Court invited and has received supplemental briefing from the parties concerning burden of proof. (See May 18, 2013 Sullivan Ltr. (Dkt. No. 67); May 18, 2013 Knoezer Ltr. (Dkt. No. 66))

The general rules for determining burden of proof in an insurance coverage action are "well established." "[U]nder New York law[,] a policyholder bears the burden of showing that the insurance contract covers the loss." Morgan Stanley Group Inc. v. New England Ins. Co., 225 F.3d 270, 276 (2d Cir. 2000) (citing Jakobson Shipyard, Inc. v. Aetna Cas. & Sur. Co., 961 F.2d 387, 389 (2d Cir. 1992); Paul Revere Life Ins. Co. v. Bavaro, 957 F. Supp. 444, 447 (S.D.N.Y. 1997); Chase Manhattan Bank, N.A. v. Travelers Group, Inc., 269 A.D. 2d 107 (1st Dept. 2000); Munzer v. St. Paul Fire & Marine Ins. Co., 145 A.D.2d 193 (3d Dept. 1989). Conversely, "[a]n insurer bears the burden of proof when it claims that an exclusion in the policy applies to an otherwise covered loss." Id. at 276 n.1 (citing Village of Sylvan Beach, N.Y. v. Travelers Indem. Co., 55 F.3d 114, 115 (2d Cir. 1995).

The language at issue in this litigation is found in an "Insuring Clause" and associated definitions. (Policy, §§ II, V) The Policy is a form contract prepared by the Insurer, and there is no evidence that Novel played any role in the drafting of the language in dispute.

The "Exclusions" section of the Policy does not address how the "Endorsed Credit Limit" provision should be applied. (Id. at § IV)

"Determining whether there is no coverage by reason of exclusion as opposed to lack of inclusion can be problematic." NGM Insur. Co. v. Blakely Pumping, Inc., 593 F.3d 150, 153 (2d Cir. 2010) (citation omitted). This is because "[a]ny language providing coverage for certain events of necessity implicitly excludes other events." Consol. Edison of New York, Inc., 98 N.Y.2d 208, 219 (2002). In distinguishing between exclusions and lack of coverage courts should consider whether the claimed loss "was initially covered by the policy and only 'became "uncovered" upon the happening of a subsequent event,'" or whether "there 'was never a policy in effect covering the [claimed loss].'" NGM Ins. Co., 593 F.3d at 154 (quoting Planet Insurance Co. v. Bright Bay Classic Vehicles, Inc., 75 N.Y.2d 394, 401 (1990).

While courts consider whether disputed language is found in a policy's "Exclusions" section, see, e.g., id. at 153-54; Empire Fire & Marine Ins. Co. v. Elrac, Inc., No. 04 Civ. 10315(GEL), 2006 WL 3734308, at *7 (S.D.N.Y. Dec. 18, 2006) (holding that provision extending coverage only to authorized drivers was a coverage provision, not an exclusion, and noting that the provision was found in a subsection entitled "WHO IS AN INSURED" and not in the exclusion section), "[t]he labels placed on the relevant policy language by the insurer . . . do not control." Elacqua v. Physicians' Reciprocal Insurers, 21 A.D. 3d 702, 704-05 (3d Dept. 2005). Accordingly, even if the policy language allegedly resulting in a lack of coverage is found in a definitions section, or in "a category called 'limiting language' rather than 'exclusion,' the language may nevertheless 'amount[ ] to an exclusion." Id. (quoting Planet Ins. Co. v. Bright Bay Classic Vehs., 75 N.Y.2d at 400); see also NGM Ins. Co., 593 F.3d at 153-54.

Special rules apply where, as here, a policy is ambiguous as to the extent of coverage. "If the court concludes that an insurance policy is ambiguous, then the burden shifts to the insurer to prove that its interpretation is correct: if extrinsic evidence is available but inconclusive, the burden shifts at the trial stage." Morgan Stanley Group Inc., 225 F.3d at 276. Stated another way, "[i]f there is an issue of fact as to the meaning of language used in an insurance policy, the burden of proof is on the insurer to establish that the facts do not bring the event within the policy's coverage." General Accident Ins. Co. of Am. v. Manchester, 116 A.D. 2d 790, 792 (3d Dept. 1986) (citing Sincoff v. Liberty Mutual Ins. Co., 11 N.Y.2d 386, 390-91 (1962); Mobil Oil Corp. v Reliance Ins. Co., 69 Misc. 2d 876, 879 (Sup. Ct. N.Y. Cty. 1971), aff'd, 39 A.D. 2d 839 (1st Dept. 1972); see also Kronfeld v. Fidelity & Cas. Co. of N.Y., 53 A.D. 2d 190 (1st Dept. 1976) ("Where a question of fact exists as to insurance coverage limitations, the burden 'is on the defendant to establish that the words and expressions used not only are susceptible of the construction sought by the defendant [insurance company] but that it is the only construction which may fairly be placed on them." (citing Lachs v. Fidelity & Cas. Co. of N.Y., 306 NY 357, 365 (1954); Hartol Prods. Corp. v. Prudential Ins. Co., 290 NY 44, 49 (1943)). "The burden is upon the insurer to prove that coverage does not exist. The clause itself must afford clear notice of non-coverage." Id.; see also Mobil Oil Corp., 69 Misc. 2d at 879 ("If there is an issue of fact as to the meaning of the [coverage] language . . . , the burden is on the carrier on the basis of the principle that every ambiguity will be resolved against the carrier . . . .").

Here, the parties offer conflicting interpretations of the relevant Policy provisions, including those entitled "Endorsed Credit Limit" and "Insured Debt," and this Court has determined that these coverage provisions are ambiguous. Because there is an issue of fact as to

the meaning of these policy terms, the burden shifts to the Insurer to prove at trial – by a preponderance of the evidence – that the facts presented to the jury do not bring the events here within the Policy's coverage. See Morgan Stanley Group Inc., 225 F.3d at 276; General Accident Ins. Co. of Am., 116 A.D. 2d at 792.

At trial, the jury will be instructed that the Court has found the relevant Policy provisions to be ambiguous as a matter of law. See Haber v. St. Paul Guardian Ins. Co., 137 F.3d 691, 695 (2d Cir. 1998) ("[w]hether contract language is ambiguous is a question of law"). Subject to further argument from counsel before or at the charge conference, the Court intends to instruct the jury as follows concerning extrinsic evidence: The jury will be instructed to consider whether the extrinsic evidence presented at trial resolves the ambiguity. See Actors Fed. Credit Union v. Cumis Ins. Soc'y, Inc., No. 11Civ2192 (MEA), 2013 WL 754713, at *4 (S.D.N.Y. Feb. 28, 2013) ("In this case, we have determined that certain contract provisions are ambiguous, but there has not yet been any examination of the parties' extrinsic evidence to determine the meaning of those provisions. That examination is precisely the purpose of the upcoming jury trial.") The jury will be further instructed that if the ambiguity cannot be resolved by examination of the extrinsic evidence, it should construe the ambiguous language in accordance with the rule of contra proferentem, a maxim of contract construction that requires ambiguous contract language to be construed against the insurer. See Atl. Cas. Ins. Co. v. Value Waterproofing, Inc., No. 11 Civ. 7565 (DLC), 2013 WL 152854, at *6 (S.D.N.Y. Jan. 15, 2013) ("Ambiguity in the language of the insurance contract that is not resolved by consideration of available extrinsic evidence is construed against the insurer and in favor of the insured."); Actors Fed. Credit Union, 2013 WL 754713, at *4 ("the doctrine of contra proferentem only applies if the ambiguity cannot be resolved by examining extrinsic evidence of the parties' intentions,

either as a matter of law or as a matter of fact") (quotation omitted); Sarinsky's Garage Inc. v. Erie Ins. Co., 691 F. Supp. 2d 483, 486 (S.D.N.Y. 2010) ("Where the ambiguity cannot be resolved by examining extrinsic evidence of the parties' intentions – either as a matter of law or as a matter of fact – the court should construe the ambiguous language in accordance with the rule of contra proferentem, a rule of contract construction which requires the court to construe the contract against the insurer."); Alfin, Inc. v. Pacific Ins. Co., 735 F. Supp. 115, 121 n.5 (S.D.N.Y. 1990) ("Furthermore, perhaps the fact finder, after hearing all the evidence, will be able to resolve the dispute without the need to employ this doctrine of construction, which is only to be used as a last resort.").

## CONCLUSION

For the reasons stated above, Defendant QBE Insurance Corp. will have the burden of proving at trial that the transactions at issue are not covered by the credit insurance policy it issued to Plaintiff Novel Commodities S.A.

Dated: New York, New York
May 20, 2013

SO ORDERED.

Paul G. Gardephe
United States District Judge