UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NOVEL COMMODITIES S.A.,

                Plaintiff,

    v.

QBE INSURANCE CORPORATION,

                Defendant.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: May 23, 2013

11 Civ. 6339 (PGG)

# JURY INSTRUCTIONS

May 23, 2013

I.      **GENERAL INSTRUCTIONS**

   A.      **Introductory Remarks**

Members of the jury, I will now instruct you as to the law that governs this case. You have been handed a copy of the instructions I will read. You should feel free to read along or to just listen to me. You will be able to take your copy of the instructions into the jury room.

You have heard all of the evidence in the case as well as the final arguments of the parties. It has been obvious to everyone in the courtroom that you have paid careful attention to the evidence, and I am confident that you will act together with fairness and impartiality to reach a just verdict.

There are three parts to these instructions. First, I'll give you general instructions about your role, and about how you are to go about deciding the factual issues in this case. Second, I'll give you instructions concerning the law applicable to this particular case. Third, I'll give you final instructions about procedure.

It is important that you listen carefully. I'm reading these instructions from a prepared text because the law is made up of words, and those words are very carefully chosen. This is not a time to ad lib. So when I tell you what the law is, it is critical that I use exactly the right words.

   B.      **Role of the Court**

My duty is to instruct you on the law. It is your duty to accept these instructions of law and to apply them to the facts as you determine them. With respect to legal matters, you must take the law as I give it to you. If any attorney has stated a legal principle different from any that I state to you in my instructions, it is my instructions that you must follow.

You are to consider these instructions together as a whole; in other words, you are not to isolate or give undue weight to any particular instruction. You must not substitute your own notions or opinions of what the law is or ought to be.

### C.     Role of the Jury

As members of the jury, you are the sole and exclusive judges of the facts. You decide what happened. You must determine the facts based solely on the evidence received in this trial. Any opinion I might have regarding the facts is of absolutely no consequence.

### D.     Role of Counsel

The personalities and the conduct of counsel in the courtroom are not in any way at issue. If you formed an opinion of any kind as to any of the lawyers in the case, favorable or unfavorable, whether you approved or disapproved of their behavior as advocates, that should not enter into your deliberations.

From time to time, the lawyers and I had conferences at the bench and other conferences out of your hearing. These conferences involved procedural and evidentiary matters, and should not enter into your deliberations at all.

Lawyers have a duty to object when the other side offers testimony or other evidence that the lawyer believes is not admissible. It is my job to rule on those objections. Why an objection was made is not your concern. You should not draw any inference simply from the fact that a lawyer objects to a question. If I sustained the objection, you may not consider the testimony or exhibit at issue; if I overruled the objection, you may consider the testimony or exhibit just as you would any other evidence in the case.

### E.     Sympathy or Bias

You must evaluate the evidence calmly and objectively, without prejudice or sympathy. You must be completely fair and impartial. Your verdict must be based solely on the

evidence presented at this trial, or the lack of evidence. Our system of justice cannot work unless you reach your verdict through a fair and impartial consideration of the evidence.

You may not consider, in deciding the facts of the case, any personal feelings you may have about the race, national origin, sex or age of any party or witness. You must regard the parties as of equal standing in the community, and of equal worth. All parties are entitled to the same fair trial at your hands. They stand equal before the law, and are to be dealt with as equals in this court.

### F.   What Is and Is Not Evidence

In determining the facts, you must rely upon your recollection of the evidence. The evidence in this case consists of the testimony of the witnesses, the exhibits received in evidence, and the parties' stipulations as to certain facts.

You are not to consider questions asked by the lawyers as evidence. It is the witnesses' answers that are evidence, not the questions. The questions are significant only insofar as they put the answers in context.

From time to time, I asked witnesses questions. You should draw no inference from that. My questions were only intended for clarification or to expedite matters and were not intended to suggest any opinion on my part as to whether any witness was more or less credible than any other witness, or any view as to what your verdict should be.

If I struck or excluded any testimony, you may not consider that testimony in rendering your verdict.

To constitute evidence, exhibits must first be received in evidence. Exhibits marked for identification but not admitted are not evidence, nor are materials that were used only to refresh a witness's recollection.

Arguments by the lawyers are not evidence, because the lawyers are not witnesses. What they have said to you in their opening statements and in their closing arguments may help you understand the evidence and assist you in reaching a verdict, but these arguments are not evidence. Moreover, if your recollection of the evidence differs from the statements made by the lawyers in their arguments to you, it is your recollection that controls.

Finally, any statements that I may have made during the trial do not constitute evidence. Similarly, any statements or rulings I have made during the trial, are not any indication of my views of what your decision should be. The decision here is for you alone.

It is for you alone to decide what weight, if any, should be given to the testimony and the exhibits received in evidence in this case.

G.   Direct and Circumstantial Evidence

Generally, there are two types of evidence that you may consider in reaching your verdict.

Direct evidence is testimony by a witness about something he or she knows by virtue of his or her own senses – something seen, felt, touched, or heard. For example, if a witness were to testify that when he or she left home this morning, it was raining, that would be direct evidence about the weather. Direct evidence may also be in the form of an exhibit.

Circumstantial evidence is evidence from which you may infer the existence of certain facts. For example, assume that when you came into the courthouse this morning the sun was shining and it was a nice day. Assume that the courtroom blinds were drawn and you could not look outside. As you were sitting here, someone walked in with an umbrella, which was dripping wet. Then a few minutes later another person entered with a wet raincoat. Now, you cannot look outside of the courtroom and you cannot see whether or not it is raining. So you

have no direct evidence of that fact. But based on the facts that I have asked you to assume, you could conclude that it had been raining.

That is all there is to circumstantial evidence. On the basis of reason, experience and common sense, you infer from one established fact the existence or non-existence of some other fact.

The matter of drawing inferences from facts in evidence is not a matter of guesswork or speculation. An inference is a logical, factual conclusion that you might reasonably draw from other facts that have been proven. Many material facts – such as what a person was thinking or intending– are rarely easily proven by direct evidence. Often such facts are established by circumstantial evidence.

Circumstantial evidence is of no less value than direct evidence.

### H. Witness Credibility

You should evaluate the credibility or believability of the witnesses by using your common sense. Common sense is your greatest asset as a juror. Ask yourself whether the witness appeared honest, open and candid. Did the witness appear evasive or as though he or she was trying to hide something? How did the witness's responsiveness on direct examination compare to that witness's responsiveness on cross-examination?

If you find that any witness lied under oath, you should view the testimony of that witness cautiously and weigh it with great care. It is for you to decide, however, how much of the witness's testimony, if any, you wish to believe. Few people recall every detail of every event precisely the same way. A witness may be inaccurate, contradictory, or even untruthful in some respects and yet entirely believable and truthful in other respects. It is for you to determine whether such inconsistencies are significant or inconsequential, and whether to accept or reject all or to accept some and reject the balance of that witness's testimony.

In sum, it is up to you to decide whether the testimony of a witness is truthful and accurate, in part, in whole, or not at all, as well as what weight, if any, to give to the testimony of that witness.

In evaluating the testimony of any witness, you may consider, among other things:

- the witness's intelligence;

- the ability and opportunity the witness had to see, hear, or know the things that the witness testified about;

- the witness's memory;

- any interest, bias, or prejudice the witness may have;

- the manner of the witness while testifying; and

- the reasonableness of the witness's testimony in light of all the evidence in the case, including testimony from other witnesses and the exhibits that have been received in evidence.

### I. Prior Inconsistent Statements

You have heard evidence that, at some earlier time, witnesses have said or done something that counsel argues is inconsistent with their trial testimony.

Evidence of prior allegedly inconsistent statements was introduced to help you decide whether to believe the trial testimony of a witness. If you find that a witness made an earlier statement that conflicts with the witness's trial testimony, you may consider that fact in deciding how much of the witness's trial testimony, if any, to believe.

In making this determination, you may consider whether the witness purposely made a false statement or whether it was an innocent mistake; whether the inconsistency concerns an important fact, or whether it had to do with an insignificant detail; whether the witness had an explanation for the inconsistency, and whether that explanation accords with your common sense.

6

It is exclusively your decision, based upon all the evidence and your own good judgment, whether the prior statement was inconsistent, and if so how much weight, if any, to give the inconsistent statement in determining whether to believe all, or part, of the witness's testimony.

### J.     Bias of Witnesses

In deciding whether to believe a witness, you should consider any evidence that the witness is biased in favor of or against one of the parties.  Likewise, you should consider evidence of any other interest or motive that the witness may have in cooperating with one side or the other.  You should also take into account any evidence that a witness may benefit in some way from the outcome of the case.

It is your duty to consider whether the witness has permitted any such bias or interest to color the witness's testimony.  If you find that a witness is biased, you should view the witness's testimony with caution, weigh it with great care, and subject it to close and searching scrutiny.

Of course, the mere fact that a witness has an interest in the outcome of this case does not mean that the witness has not told the truth.  It is for you to decide from your observations and applying your common sense and experience whether the possible interest of any witness has intentionally or otherwise colored or distorted that witness's testimony.  You are not required to disbelieve a witness with an interest in the outcome of this case; you may accept as much of that witness's testimony as you deem reliable and reject as much as you deem unworthy of acceptance.

### K.     Stipulation as to Facts

During the trial, the parties read stipulations into the record. A stipulation is an agreement between the parties that a certain fact is true. In your deliberations, you must regard such agreed-upon facts as true.

### L.     Burden of Proof

The preponderance of the evidence standard applies to all disputed issues in this case.

To establish by a preponderance of the evidence means that the evidence of the party having the burden of proof must be more convincing and persuasive to you than the evidence opposed to it. A preponderance of the evidence means the greater weight of the evidence. The difference in persuasiveness need not be great: it requires only that you find that the scales tip, however slightly, in favor of the party having the burden of proof – that what that party claims is more likely than not true. If you find that the credible evidence as to a particular issue is evenly divided, then you must find in favor of the party not having the burden of proof.

What is important here is the quality and persuasiveness of the evidence relied on by a party, and not the number of witnesses, the number or variety of the exhibits that party introduced, or the length of time that party spent on a particular subject. In determining whether any fact has been proven by a preponderance of the evidence, you may consider the testimony of the witnesses, the exhibits received in evidence, and the stipulated facts, regardless of which side introduced this evidence. Simply because I have permitted certain evidence to be introduced does not mean that I have decided that it is important or significant. That is for you to decide.

## II.  INSTRUCTIONS CONCERNING SPECIFIC CLAIMS

I will now turn to the law that governs the specific issues in this case.

### A.  The Scope of Coverage Issue

As you know, the dispute between the parties concerns a trade credit insurance policy (the "Policy") issued by QBE Insurance Corporation to Novel Commodities S.A. on October 1, 2009.  The Policy provided coverage to Novel in the event that a Mexican company to which it was shipping rice – CIA. Arrocera Covadonga – did not pay Novel for the rice.  The parties disagree about the scope of that coverage, however.

Both sides agree that coverage under the Policy is subject to a $15 million limit – referred to as the "Endorsed Credit Limit" – but they disagree about how this provision of the Policy should be applied.  The parties also disagree about the proper interpretation of a number of other Policy provisions, including the "Insured Debt" and "Co-Insurance" provisions.

Novel argues that while an invoice issued when more than $15 million in credit is outstanding to Covadonga is not initially covered, that invoice is covered by the Policy once payments from Covadonga bring the outstanding credit balance down to $15 million or less.

QBE contends that application of the $15 million Endorsed Credit Limit provision happens only once – when the invoice is issued.  If the amount of credit outstanding when the invoice is issued is more than $15 million, Novel has – according to QBE – no coverage for that invoice.

### B.  Burden of Proof

As I stated earlier, the preponderance of the evidence standard applies to all disputed issues in this case.  QBE bears the burden of proof on these issues.  Accordingly, in order for you to rule in favor of QBE, you must find that QBE has proven, by a preponderance of the evidence, that the Policy provides no coverage for invoices issued by Novel when more than

9

$15 million in credit is outstanding to Covadonga.[1]  In order for QBE to prevail, it must demonstrate that (1) it would be unreasonable for the average man or woman reading the Policy to construe it as Novel does; and (2) QBE's interpretation is the only construction that fairly could be placed on the Policy.[2]

### C. Rules of Contract Interpretation

Insurance policies are contracts, and therefore they are subject to principles of contract interpretation.  The goal of contract interpretation is to determine, and then give effect to, the expressed intentions of the parties as reflected in their contract.  To determine the meaning of the Policy, you must first look to its language.  Where, as here, the relevant Policy language is not clear, then you must look to that meaning which may be inferred from the actions of the parties, what they said and did, and all the surrounding circumstances.

In connection with the term "parties," you should keep in mind that it is undisputed that James Besch of Access Global Capital LLC was acting as Novel's agent at all relevant times.  Because Mr. Besch had an agency relationship with Novel, his acts, statements, and conduct are binding on Novel.

As I will explain, you should consider the parties' conduct before and after the October 1, 2009 Policy was issued, to the extent that that conduct sheds light on the parties' understanding of the meaning of the relevant Policy provisions.  The practical interpretation of the Policy by the parties, evidenced by their conduct after the Policy was issued and before it

---

[1] Morgan Stanley Group Inc. v. New England Ins. Co., 225 F.3d 270, 276 (2d Cir. 2000); General Accident Ins. Co. of Am. v. Manchester, 116 A.D. 2d 790, 792 (3d Dept. 1986); Kronfeld v. Fidelity & Cas. Co. of N.Y., 53 A.D. 2d 190 (1st Dept. 1976); Mobil Oil Corp. v. Reliance Ins. Co., 69 Misc.2d 876, 879 (Sup. Ct. N.Y. Cty. 1971), aff'd, 39 A.D.2d 839 (1st Dept. 1972).
[2] Vargas v. Insurance Co. of North America, 651 F.2d 838, 840 (2d Cir. 1981); Kenevan v. Empire Blue Cross and Blue Shield, 791 F.Supp. 75, 79 (S.D.N.Y. 1992); Sincoff v. Liberty Mut. Fire Ins. Co., 11 N.Y.2d 386, 390 (1962); New York v. Evanston Ins. Co., 39 A.D.3d 153, 156 (2d Dept. 2007); Boggs v. Comm. Mut. Ins. Co., 220 A.D. 2d 973, 974 (3d Dept. 1995).

became the subject of great controversy, is entitled to great weight. [3]

The first and most important source for determining the parties' intentions in entering into the Policy is the language they used in their agreement. Accordingly, your analysis must begin with the relevant language in the Policy. To the extent that words used in the Policy are defined terms, they are in bold. You must give such terms the meaning set forth in the Policy. To the extent that words in the Policy are not defined terms, you must give these words their plain and ordinary meaning. An insurance contract should be construed so as to give full meaning and effect to all of its provisions. [4]

Here, at an earlier stage of this case, I determined that the Policy language is ambiguous as to the coverage issue in dispute. In other words, I concluded that the Policy does not provide a clear answer as to how the $15 million Endorsed Credit Limit and other provisions cited by the parties should be applied. Nonetheless, your analysis must begin with the relevant language in the Policy.

Where, as here, the language used in a contract is ambiguous, the jury must also consider what courts refer to as "extrinsic evidence." This is evidence that goes beyond the language used in the Policy. Such evidence is referred to as "extrinsic evidence" because it is extrinsic to the contract. "Extrinsic evidence" includes the facts and circumstances surrounding the agreement, including proof regarding communications between the parties that preceded the agreement, industry custom and practice, and course of performance or course of dealing. [5] Evidence of the parties' actions, deeds, and statements during performance of the insurance

---

[3] Charge of Judge Sand in Fogarty v. Near North Insurance Brokerage Co., Inc., No. 96 Civ. 1637 (Nov. 5, 1997) (Trial Transcript ("Tr.") 406).
[4] Olin Corp. v. Am. Home Assur. Co., 704 F.3d 89, 99 (2d Cir. 2012).
[5] Chesapeake Energy Corp. v. Bank of New York Mellon Trust Co., N.A., No. 13 Civ. 1582(PAE); 2013 WL 1890278 (S.D.N.Y. May 8, 2013); Faulkner v. Natl. Geographic Socy., 452 F. Supp. 369, 375-76 (S.D.N.Y. 2006); Nycal Corp. v Inoco PLC, 988 F. Supp. 296, 300 (S.D.N.Y. 1997), aff'd, 166 F.3d 1201 (2d Cir. 1998); Johnson & Johnson v Guidant Corp., 525 F. Supp. 2d 336, 353 (S.D.N.Y. 2007).

11

contract may provide evidence of their mutual understanding of what the insurance contract required.[6]

"Extrinsic evidence" does not include what one side thought the Policy meant but never communicated to the other side. A party's unexpressed subjective intent is not relevant to the interpretation of ambiguous Policy language. Determination of the parties' intent at the time they entered into the insurance contract is not governed by their unexpressed subjective views, but rather by what they wrote, their acts, conduct, and all surrounding circumstances, to the extent that such acts, conduct, and surrounding circumstances were observed, heard, or seen by, or were otherwise known to, the other party.[7]

An insurance policy must be read as a whole and every part should be read with reference to the whole.[8] If possible, the Policy should be interpreted so as to give effect to its general purposes as revealed within the four corners of the Policy. An interpretation of a contract that has the effect of rendering at least one clause superfluous or meaningless is not preferred and should be avoided if possible.[9]

If – after considering the relevant Policy language and the "extrinsic evidence" – you are still unable to determine the parties' intent, then you may, as a last resort, consider the

---

[6] Hoyt v. Andreucci, 433 F.3d 320, 332 (2d Cir. 2006); Jobim v Songs of Universal, Inc., 732 F. Supp. 2d 407, 416 (S.D.N.Y. 2010) (citing Record Club of America, Inc. v. United Artists Records, Inc., 1991 WL 73838, at *10 (S.D.N.Y. April 29, 1991); Ocean Transport Line, Inc. v. American Philippine Fiber Indus., 743 F.2d 85, 91 (2d Cir. 1984) (citing Old Colony Trust Co. v. Omaha, 230 U.S. 100, 118 (1913); Time Warner Cable of New York City v. City of New York, 943 F. Supp. 1357, 1390 (S.D.N.Y. 1996).
[7] Faulkner v Natl. Geographic Soc., 452 F. Supp. 2d 369, 377 (S.D.N.Y. 2006), aff'd sub nom. Ward v Natl. Geographic Socy., 284 Fed App'x 822 (2d Cir. 2008) (citing Klos v. Polskie Linie Lotnicze, 133 F.3d 164, 168 (2d Cir. 1997); Rosoff v. Mountain Laurel Ctr. for the Perf. Arts, 317 F. Supp. 2d 493, 499 (S.D.N.Y. 2004)); Lubrication & Maint., Inc. v. Union Res. Co., 522 F. Supp. 1078, 1081 (S.D.N.Y. 1981); Charge of Judge Sand in Fogarty v. Near North Insurance Brokerage Co., Inc., No. 96 Civ. 1637 (Nov. 5, 1997) (Tr. 407).
[8] Columbia v. Continental Ins. Co., 83 N.Y.2d 618, 628 (1994); Allendale Mut. Ins. Co. v Excess Ins. Co., Ltd., 992 F Supp 271, 274 (S.D.N.Y. 1997).
[9] LaSalle Bank Nat. Ass'n v. Nomura Asset Capital Corp., 424 F.3d 195, 206 (2d Cir. 2005).

fact that QBE drafted the relevant portions of the Policy, and that, as a result, any ambiguities in the language of the Policy must be construed against QBE.[10] Accordingly, where efforts to determine the parties' intent from the Policy itself and from "extrinsic evidence" prove fruitless, you should then construe the relevant Policy language adversely to QBE, as the party that drafted that language.[11]

You will consider and apply all of these rules of contract interpretation, as well as the more general instructions provided earlier, and then answer the question posed on the verdict form I will discuss in a moment. Your answer to that question will determine the outcome of this case.

---

[10] Union Ins. Soc'y v. William Gluckin & Co., 353 F.2d 946, 951-52 (2d Cir. 1965) ("The terms of an insurance policy are usually what the insurance company chooses to make them. That is the rationale of the general rule that any ambiguity is to be resolved liberally in favor of the insured. . . . However, this rule of construction 'is applicable only where the ambiguity persists after all other aids to construction are used. It certainly does not foreclose the use of parole evidence initially to resolve such ambiguity."); Atl. Cas. Ins. Co. v. Value Waterproofing, Inc., No. 11 Civ. 7565 (DLC), 2013 WL 152854, at *6 (S.D.N.Y. Jan. 15, 2013) ("Ambiguity in the language of the insurance contract that is not resolved by consideration of available extrinsic evidence is construed against the insurer and in favor of the insured."); Actors Fed. Credit Union, 2013 WL 754713, at *4 ("the doctrine of contra proferentem only applies if the ambiguity cannot be resolved by examining extrinsic evidence of the parties' intentions, either as a matter of law or as a matter of fact") (quotation omitted); Sarinsky's Garage Inc. v. Erie Ins. Co., 691 F. Supp. 2d 483, 486 (S.D.N.Y. 2010) ("Where the ambiguity cannot be resolved by examining extrinsic evidence of the parties' intentions – either as a matter of law or as a matter of fact – the court should construe the ambiguous language in accordance with the rule of contra proferentem, a rule of contract construction which requires the court to construe the contract against the insurer."); Alfin, Inc. v. Pacific Ins. Co., 735 F. Supp. 115, 121 n.5 (S.D.N.Y. 1990) ("Furthermore, perhaps the fact finder, after hearing all the evidence, will be able to resolve the dispute without the need to employ this doctrine of construction, which is only to be used as a last resort.").

[11] Charge of Judge Sand in Fogarty v. Near North Insurance Brokerage Co., Inc., No. 96 Civ. 1637 (Nov. 5, 1997) (Tr. 408); "[C]ourts have commonly employed jury instructions to suggest the use of the contra proferentem rule to juries." State Farm Mut. Auto. Ins. Co. v Philly Family Practice, Inc., 525 F. Supp. 2d 718, 726 (E.D. Pa. 2007) (citing Fogarty v. Near N. Ins. Brokerage, 162 F.3d 74, 78 (2d Cir. 1998)); Webb v GAF Corp., 936 F Supp 1109, 1119 (N.D.N.Y. 1996); Porous Media Corp. v. Midland Brake, Inc., 220 F.3d 954, 960 n. 8 (8th Cir. 2000) ("A contra proferentem instruction is appropriate where one party drafts and controls the contractual terms of a contract; in such situation, a contra proferentem instruction tells the jury to construe any ambiguity in such contract against the drafter.").

13

### III. FINAL INSTRUCTIONS ON PROCEDURE

    A. Right to See Exhibits and Obtain Testimony; <u>Communications With Court</u>

Members of the jury, that concludes my instructions to you concerning the specific issues in this case. In a moment, you will retire to the jury room and begin your deliberations. All of the exhibits that were admitted into evidence during the trial will be sent into the jury room. If you want any of the testimony, you may also request that. Please remember that it is not always easy to locate what you might want, so be as specific as you possibly can be in requesting portions of testimony. If you want any further explanation of the law as I have explained it to you, you may also request that. As I noted earlier, however, you will each be permitted to take your copy of the instructions into the jury room.

Any communication to me should be made in writing, signed by your foreperson, include the date and time, and be given to one of the marshals. Please make any notes as clear and precise as possible. Do not tell me or anyone else how the jury stands on any issue until after a unanimous verdict is reached.

    B. <u>Duty to Deliberate/Unanimous Verdict</u>

As to the question you are asked in the verdict form, your decision must be unanimous.

It is your duty as jurors to consult with one another and to deliberate with a view to reaching an agreement. Each of you must decide the case for himself, but you should do so only after a consideration of the case with your fellow jurors, and you should not hesitate to change an opinion when convinced that it is erroneous. Discuss and weigh your respective opinions dispassionately, without regard to sympathy, without regard to prejudice or favor for either side, and adopt that conclusion which in your good conscience appears to be most in accordance with the truth.

Again, your verdict must be unanimous, but you are not bound to surrender your honest convictions concerning the effect or weight of the evidence for the mere purpose of returning a verdict or solely because of the opinion of other jurors. Each of you must make your own decision about the proper outcome of this case based on your consideration of the evidence and your discussions with your fellow jurors. No juror should surrender his conscientious beliefs solely for the purpose of returning a unanimous verdict.

If you are divided, do <u>not</u> report how the vote stands, and if you have reached a verdict do not report what it is until you are asked in open court.

C.   <u>Verdict Form</u>

Your verdict will be reflected in a Verdict Form that you will complete. The question posed on the Verdict Form is whether QBE has met its burden of proof as explained in these jury instructions. You are to apply all of the instructions you have been given in answering that question.

D.   <u>Duties of Foreperson</u>

Finally, I referred a moment ago to a foreperson. It is customary for Juror Number 1 to serve as the foreperson, and that is what we will do here. The foreperson doesn't have any more power or authority than any other juror, and his vote or opinion doesn't count for any more than any other juror's vote or opinion. The foreperson is merely your spokesperson to the court. He will send out any notes, and when the jury has reached a verdict, he will notify the marshal that the jury has reached a verdict, and you then will come into open court and deliver your verdict.

  E. <u>Return of Verdict</u>

After you have reached a verdict, your foreperson will fill in the form that has been given to you, sign and date it and advise the marshal outside your door that you are ready to return to the courtroom.

Each of you must be in agreement with the verdict which is announced in court. Once your verdict is announced by your foreperson in open court and officially recorded, it cannot ordinarily be revoked.

## IV. CONCLUSION

Members of the jury, that concludes my instructions to you. I will ask you to remain seated while I confer with the attorneys to see if there are any additional instructions that they would like me to give.

* * * * *

The marshal will now be sworn. Members of the jury, you may now begin your deliberations.