

The Chrysler Building
405 Lexington Avenue
New York, New York 10174
Telephone: 212 710 3900
Facsimile: 212 710 3950
www.clydeco.us
Stephen.Kennedy@clydeco.us

November 18, 2013

**BY ECF AND HAND DELIVERY**

Hon. Paul G. Gardephe
United States District Judge
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

**Re: Novel Commodities S.A. v. QBE Insurance Corporation (Index No. 11-CV-6339)**

Dear Judge Gardephe:

We represent Defendant QBE Insurance Corporation ("QBE") in the above-referenced action. We write in response to Your Honor's request that QBE submit authorities on two topics related to QBE's proposed interpleader action, namely: (1) whether an interpleader action can be properly brought by a judgment debtor where adverse claims have been asserted with respect to the amount of the judgment; and (2) whether the claim to the judgment amount asserted by Access Global Capital, LLC ("Access Global") is a sufficient basis for an interpleader action. For the reasons that follow, QBE respectfully requests that the Court grant it leave to pursue an interpleader action against Novel Commodities S.A. ("Novel") and Access Global.

## I. Statement of Facts

As Your Honor knows, this litigation relates to an insurance policy issued by QBE to the named insured "Access Global Capital LLC *for the account of Novel Commodities S.A.*" (emphasis original) (the "Policy"). The issue currently before the Court relates to the competing claims of Novel and its agent, Access Global, to a portion of the Judgment that this Court entered against QBE and in favor of Novel. Access Global contends that it advanced the Policy premium and that it is therefore entitled to more than $900,000 of the Judgment Amount.

Clyde & Co US LLP is a Delaware limited liability partnership with offices in New York, San Francisco and New Jersey.
Clyde & Co US LLP is affiliated with Clyde & Co LLP, a limited liability partnership registered in England and Wales that practices from branch and affiliate* offices in: Abu Dhabi, Bangalore*, Belgrade*, Caracas, Dar es Salaam, Doha, Dubai, Guildford, Hong Kong, London, Moscow, Mumbai*, Nantes, Paris, Piraeus, Rio de Janeiro, Riyadh*, Shanghai, Singapore and St. Petersburg*



Access Global first asserted a claim to proceeds of the Policy in a letter to QBE's counsel dated April 11, 2013. (Trial Ex. DD).[1] In that letter, Access Global contended that it was an additional insured under the Policy and also claimed entitlement to policy proceeds based on the fact that it had paid policy premium on behalf of Novel. *Id.*

At trial, Access Global's principal, James Besch, maintained Access Global's claim to Policy proceeds. (May 21 Trial Tr. at 236:17-238:6, attached hereto as Ex. A). While Mr. Besch testified at trial that he advanced the policy premium and that Covadonga agreed but failed to reimburse him for it, he also stated that Novel owed him the policy premium based on "an agency agreement with Novel in which they indemnify me against any loss, so that's the reason." (*Id.* at 236:24-237:1). The agency agreement between Access Global and Novel specifically states that Novel must indemnify Access Global against any losses relating to, among other services, Access Global's procurement of the Policy:

> 1. Novel has engaged Access as a financial consultant for the purpose of arranging for . . . credit insurance . . . . Credit insurance booked on behalf of Novel by Access Global Capital will be administration [sic] by the latter in strict conformity of the policy terms but always in coordination with Novel and as per their instructions.
>
> . . . .
>
> 3. Novel shall indemnify Access and its members [the "Indemnitees"] and hold it harmless against any and all losses, claims, damages or liabilities to which Access may become subject arising in any manner out of or in connection with the rendering of services by Access hereunder or the rendering of additional services by Access as requested by Novel that are related to the services rendered hereunder, unless it is finally judicially determined that such losses, claims, damages or liabilities resulted directly from gross negligence or willful misconduct of Access.

(Trial Ex. 14 at ¶¶ 1, 3).

Mr. Besch also testified at trial that Access Global is entitled to any judgment amount that Novel receives because Novel has no money to pay it for the advanced premium. (Ex. B at 237:22-238-6). More recently, by letter dated November 14, 2013, Novel reasserted its claim, stating that "[t]he amount that Access is entitled to now exceeds $900,000. We demand that if this matter is not resolved amicably that you interplead the policy premiums" in this Court. (Ex. B).

---

[1] Copies of all exhibits, including Trial Exhibits, are attached to this letter.



## II. Where There Are Multiple Adverse Claims to a Judgment, Interpleader Is an Appropriate Remedy

In order for an interpleader action to lie, the stakeholder must be subject to multiple adverse claims against a single fund or liability. *Viewhaven, Inc. v. Danon*, 85 Civ. 9603 (LLS), 1986 U.S. Dist. LEXIS 24279, at *5 (S.D.N.Y. June 11, 1986). Here, both Novel and Access Global have claims against the Judgment Amount awarded against QBE in this litigation.

Case law makes clear that interpleader actions are appropriate under both Rule 22 of the Federal Rules of Civil Procedure and 28 U.S.C. § 1335 when a judgment creditor faces multiple claims against the judgment amount. For instance, in *Viewhaven*, the Court found that an interpleader action under Rule 22 was proper based on competing claims made against an arbitration award that was confirmed as a judgment by a New York state court. 1986 U.S. Dist. LEXIS 24279 at *13. As in this case with Access Global and Novel, the competing claims in *Viewhaven* were made against the judgment debtor by the judgment creditor and a third party that had a contract with the judgment creditor.

Likewise, in *Spielvogel v. Harkins & Maeger Ltd.*, 639 F. Supp. 1397 (S.D.N.Y. 1986), this Court entertained an interpleader claim where various creditors of the judgment creditor made claims to an arbitration award that was confirmed by a New York state court.[2] In *Compass Transportation Corp. v. Stangl*, 06-CV-0095E(H), 1996 U.S. Dist. LEXIS 12433 (W.D.N.Y Aug. 16, 1996), the Court presided over a statutory interpleader action relating to a personal injury judgment where various creditors of the judgment creditor claimed entitlement to the judgment amount.

Based on the foregoing authorities, it is clear that judgment debtors may bring an interpleader action when, as here, there are competing claims to the judgment amount made by the judgment creditor and other parties.

## III. Access Global's Claim to the Judgment Is a Sufficient Adverse Claim to Sustain an Interpleader Action

In both rule and statutory interpleader actions, a plaintiff must demonstrate that it is subject to multiple adverse claims. *See* Fed. R. Civ. Pro. 22 (interpleader is appropriate where there are claims "that may expose a plaintiff to double or multiple liability"); 28 U.S.C. § 1335 (courts have jurisdiction over interpleader actions where, *inter alia*, "[t]wo or more adverse claimants... are claiming or may claim to be entitled to [] money or property").

At the time an interpleader action is filed, "the claimants need not have actually asserted

[2] The *Spielvogel* decision does not specify whether the interpleader action was a Rule 22 or a statutory interpleader action.



the adverse claims . . . the requirements of the interpleader statute are satisfied if the stakeholder faces even the prospect of adverse claims being asserted against property in its possession." *Pine Run Props. v. Pine Run Limited*, 90 Civ. 6289 (PKL), 1991 U.S. Dist. LEXIS, at *27 (S.D.N.Y. Dec. 26, 1991). Demands for funds and other property made in letters have been found to constitute adverse claims sufficient to support an interpleader action. *See Viewhaven, Inc. v.*, 1986 U.S. Dist. LEXIS 24279, at *5 (finding letters by claimant asserting a right to funds sufficient to sustain an interpleader action); *Sotheby's Inc. v. Garcia*, 802 F. Supp. 1058, 1065 (S.D.N.Y. 1992) (finding letters by claimant's counsel contending right to property constituted adverse claim); *Stuyvesant Ins. Co. v. Dean Construction Co.*, 254 F. Supp. 102, 108 (S.D.N.Y. 1966) (claim made by letter found to be an adverse claim sufficient to sustain interpleader action).

The adverse claims at issue in an interpleader action need not arise from the same agreement or obligation. *See Walmart Stores, Inc. v. First American Corpo.*, 11 Civ. 7185 (PAE), 2012 U.S. Dist. LEXIS 124590, at *2-6 (competing adverse claims in interpleader action arose from: (a) money owed on purchase orders that was reduced to a court judgment; and (b) a lien issued pursuant to a "Sale of Accounts and Security Agreement").

Moreover, the availability of an interpleader action is not dependent on the merits of the adverse claims. *Viewhaven, Inc. v.*, 1986 U.S. Dist. LEXIS 24279, at *5; *Stuyvesant Ins. Co. v. Dean Constr. Co.*, 254 F. sup. 102, 107 (S.D.N.Y. 1966). Indeed, the interpleader plaintiff "is not required to evaluate the merits of conflicting claims at its peril; rather, it need only have a good faith concern about duplicitous litigation and multiple liability if it responds to the requests of certain claimants and not to others." *Sotheby's Inc.*, 802 F. Supp. at 1065.[3]

Here, Access Global, in two letters and at trial, asserted that it is entitled to the policy proceeds awarded in favor of Novel against QBE. Its claim is based on two theories of recovery: (1) it is an insured in addition to Novel under the Policy because it paid the Policy premium; and (2) the agency agreement it has with Novel requires Novel to indemnify it for any loss Access Global incurs in connection with the services provided to Novel, including the procurement of the Policy. (*See* Trial Ex. 14).

Under the foregoing principles of law, it is clear that Access Global's demands for the policy proceeds constitute an adverse claim under Federal Rule of Civil Procedure 22 and 28 U.S.C. § 1335. Since QBE should not have to pass on the merits of Novel's and Access Global's competing claims to the Judgment Amount, QBE respectfully requests that this Court grant QBE leave to commence an interpleader action so that it may deposit into the Court

---

[3] Although this Court has acknowledged that "utterly baseless" claims "without any color of support" do not give rise to an interpleader action (*see Stuyvesant*, 254 F. Supp. at 108), as the facts here demonstrate, Access Global's claim to a portion of the Judgment Amount is sufficiently colorable to support QBE's request to commence an interpleader action.



registry that much of the Judgment Amount that relates to Access Global's claims for payment "in excess of" $900,000.[4]

We thank Your Honor for your time and consideration.

Respectfully submitted,

Stephen M. Kennedy

cc: Michael T. Sullivan, Esq. (via ECF and email)
Karen E. Abravanel, Esq. (via ECF and email)
Richard C. Yeskoo, Esq. (via email)

[4] QBE will address in a separate letter to the Court Novel's request made last Friday, November 15, 2013 that the Court approve of the stipulation signed between Novel, Polish Steamship, Wind Shipping and Sullivan & Worcester.

# EXHIBIT A

**In The Matter Of:**

*NOVEL COMMODITIES S.A., v*
*QBE INSURANCE CORPORATION,*

---

*May 21, 2013*

---

*SOUTHERN DISTRICT REPORTERS*
*500 PEARL STREET*
*NEW YORK, NY 10007*
*212 805-0330*

Original File D5LBNOVF.txt

**Min-U-Script® with Word Index**

premium for this policy?
A. I did.
Q. What was that arrangement?
A. I was going to advance the premium, and Covadonga was going to reimburse me for it.
Q. Did Covadonga fulfill that part of --
A. No.
Q. -- this agreement with you?
And Covadonga is now in bankruptcy, is that --
A. They are.
MR. SULLIVAN: Pass the witness, your Honor.
CROSS-EXAMINATION
BY MR. KNOERZER:
Q. Good afternoon, Mr. Besch. My name is Mike Knoerzer.
We've not met, right?
A. We haven't.
Q. Let's go right back to this document that we've just looked at, Exhibit DD.
A. Okay.
Q. It's a letter from your attorney to me.
Is this letter saying that any money -- withdrawn.
Am I to understand you believe Covadonga owes you the premium?
A. Yes. Originally, I advanced it on behalf Covadonga. They did not repay me. I have an agency agreement with Novel in

which they indemnify me against any loss, so that's the reason.
Q. Do you believe Covadonga is the insured under the policy?
A. No.
Q. Is Novel the insured under the policy?
A. Yes.
Q. So --
A. And I am, as well. I believe I'm named as insured, as well.
Q. But you paid the premium?
A. I did.
Q. So we're in agreement Covadonga is not the insured under the policy.
A. Right.
Q. Your contention is is that Covadonga owes the premium to you?
A. That's correct.
Q. Do you have any documents to back that up?
A. I -- we have an invoice that we sent to them. I don't have it with me.
Q. Is it in the record that you're aware of?
A. I don't know. I don't believe -- I don't know.
Q. Setting aside whether Covadonga owes you the premium or not, this letter says that if Novel gets any money in this case, it should be turned over to you or your lawyer, right?
A. That's correct.

Q. So would you agree with me that you have a financial interest in the outcome of this case?
A. I absolutely do.
Q. And Novel doesn't have the money to pay you, is that the case?
A. They do not.
Q. Is Novel completely out of business?
A. I don't know. They are in trouble.
Q. Are you still working with them?
A. Yes, I am.
Q. Are you being compensated for your time here today?
A. I am not.
Q. Do we -- do you agree -- let me back up.
Mr. Besch, you've been sitting here through the entire proceeding, haven't you?
A. I have.
Q. Do you agree that invoices over the endorsed credit limit are not covered under the policy that is at issue in this case?
A. I do, until such time when older invoices are paid and then they would become insured.
Q. Let us turn to Exhibit 8. Do you have the binder?
A. I do.
Q. And I'll just show you the front page of the policy.
Do you recognize Exhibit 8 to be the policy that's at issue in this case?

A. I do.
Q. And did you see me take Mr. Gouverne through the endorsements that show that the policy amount was increased to 13,500,000?
A. Yes.
Q. And you understand that that's what happened, the policy amount was ultimately increased to 13,500,000?
A. Yes.
Q. And you also saw the endorsement to this policy, Exhibit 8, where the credit limit or the endorsed credit limit was increased to 15 million. Do you see that?
A. Yes.
Q. And you have no doubt that this is the policy that's at issue in this case?
A. No.
Q. And you agree that invoices over the $15 million endorsed credit limit of this policy are not covered?
A. Until such time as older invoices are paid, and then they would be covered.
Q. When you make the trans -- when Novel makes that transaction, do they know that older invoices will be repaid? Is there any certainty to that?
A. No.
Q. So at the time that they make the transaction above the endorsed credit limit, all they know is that they are making a

# EXHIBIT B

YESKOO HOGAN & TAMLYN, LLP
A NEW YORK LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
139 SOUTH STREET
NEW PROVIDENCE, NEW JERSEY 07974
TEL: (908) 464-8300
FAX: (908) 464-2828

RICHARD C. YESKOO[1]
STEPHEN HOGAN[2]
THOMAS T. TAMLYN[2]

[1]MEMBER N.J. & N.Y. BAR
[2]MEMBER N.Y. BAR

NEW YORK OFFICE
909 THIRD AVENUE, 28TH FLOOR
NEW YORK, NY 10022
(212) 983-0900

November 14, 2013

By Mail and E-mail

Stephen M. Kennedy
Clyde & Co. US LLP
405 Lexington Avenue
New York, NY 10174

Re: Access Global Capital, LLC/QBE Insurance

Dear Mr. Kennedy:

Our firm represents Access Global Capital, LLC ("Access"). Access is the insured of your client, QBE Insurance Corporation ("QBE"), under policy number DC/8800281/AE.

I had previously written on April 11, 2013 to your partner Michael A. Knoerzer to inform you that Access is entitled to certain proceeds of such policy. The amount that Access is entitled to now exceeds $900,000. We demand that if this matter is not resolved amicably that you interplead the policy premiums in the United States District Court for the Southern District of New York.

Yours truly,

Richard C. Yeskoo

cc: Michael Sullivan

# TRIAL EXHIBIT 14

AGREEMENT

This agreement (the "Agreement") made as of June 8, 2010 will confirm the prior understanding and agreement between Novel Commodities SA, 4-6 Avenue Industrielle, 1227, Carouge, Switzerland ("Novel") and Access Global Capital LLC, 8 Old Clinton Road, Lebanon, New Jersey, United States of America ("Access" or the "Company").

1. Novel has engaged Access as a financial consultant for the purpose of arranging for bank lines of credit, credit insurance, project finance and capital investment in Novel and its clients. Credit Insurance booked on behalf of Novel by Access Global Capital will be administration by the latter in strict conformity of the policy terms but always in coordination with Novel and as per their instructions. Any actions taken to be pre-agreed with Novel and no changes nor amendments to the policy (ies) can be done without written consent of Novel or funding source to whom such policy (ies) might be assigned as loss payee or co-insured.

2. Access's minimum fee for assisting in transactions will be 83 basis points (0.83%) of the value of each transaction, or as otherwise agreed in writing among the parties.

3. This Agreement may be terminated by either party upon 60 days written notice. This Agreement will remain in effect for any transactions in process as of the time of notice of cancellation. In addition, paragraphs 4 through 7 of this Agreement shall survive the termination of this Agreement.

4. Novel shall indemnify Access and its members (the "Indemnitees") and hold it harmless against any and all losses, claims, damages or liabilities to which Access may become subject arising in any manner out of or in connection with the rendering of services by Access hereunder or the rendering of additional services by Access as requested by Novel that are related to the services rendered hereunder, unless it is finally judicially determined that such losses, claims, damages or liabilities resulted directly from gross negligence or willful misconduct of Access. If an Indemnitee seeks indemnification under this Agreement, the Indemnitee will: (i) give notice to Novel concerning the existence of the indemnifiable event; (ii) grant authority to Novel to defend or settle any related action or claim; and, (iii) provide, at Novel's expense, such information, cooperation and assistance to Novel as may be reasonably necessary for Novel to defend or settle the claim or action. An Indemnitee's failure to give notice shall not constitute a waiver of the Indemnitee's right to indemnification and shall affect Novel's indemnification obligations only to the extent that Novel's rights are materially prejudiced by such failure or delay. Notwithstanding anything to the contrary set forth

Access Global Capital LLC
8 Old Clinton Rd
Lebanon, New Jersey 08833

1

GA 00004

herein, (i) an Indemnitee may participate, at its own expense, in any defense and settlement directly or through counsel of its choice, and (ii) Novel will not enter into any settlement agreement on terms that would diminish the rights provided to the Indemnitee or increase the obligations assumed by the Indemnitee under this Agreement, without the prior written consent of the Indemnitee. If Novel elects not to defend any claim as is required under this Agreement, the Indemnitee will have the right to defend or settle the claim as it may deem appropriate, at the cost and expense of Novel, and Novel will promptly reimburse the Indemnitee for all costs, expenses, settlement amounts and other Damages.

5. Each party expects to disclose certain non-public, confidential information regarding, among other things, investment policies, practices and clients (together the "Confidential Information") to the other. The parties each agree for a period of four (4) years from disclosure not to use Confidential Information for any purpose other than in connection with the transactions contemplated by this Agreement. The Confidential Information may be disclosed to the parties' and its affiliates' responsible employees, auditors, consultants, refinancing institutions, insurance brokers or insurance companies with a bona fide need to know. The parties agree to instruct (either as part of their normal operations and procedures or otherwise) all such employees, auditors, consultants, refinancing institutions, insurance brokers or insurance companies not to disclose such Confidential Information to third parties without the prior permission of the other party unless such disclosure is otherwise permitted herein.

Notwithstanding the above, neither party shall be prohibited from using or disclosing Confidential Information which (i) is or becomes generally available to the public other than as a result of unauthorized disclosure, (ii) was within its possession prior to its disclosure by the other party, (iii) becomes available to it on a non-confidential basis after the date hereof from any third party which is not bound by a confidentiality agreement, or (iv) is required to be disclosed by law or judicial order, provided that the party shall promptly notify the other party of such requirement so that the other party may seek an appropriate protective order or otherwise seek to protect the confidentiality of such Confidential Information. In addition, Novel agrees that Access may provide services to AgroIndustrias Covadonga C.V., CIA Arrocera Covadonga, S.A. de C.V., Mercoc for its own account.

6. Novel agrees that it will not either directly or indirectly circumvent Access to deal directly with an investment, banking, credit insurance or client source for a period of four (4) years from the later of the termination of this Agreement or the end of services to a client of Access. This non-circumvention agreement applies to indirect attempts to circumvent Access, such as through affiliates, third parties, employees, and shareholders. This list of possible means of circumvention is not exhaustive. In the event that it is determined that Access was circumvented, Access shall be entitled to recover from you the fees it would have earned from the plus five percent (5%) of all funds or other consideration directly or indirectly financed, together with interest and its attorneys fees, disbursements and costs.

Access Global Capital
#8 Old Clinton Rd
Lebanon, New Jersey 08833
James Resch
President & CEO

GA 00005

7. Miscellaneous provisions.

a. Waiver. No failure or delay by either party in exercising any right, power or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any other right, power or privilege hereunder.

b. Severability. In the event any one or more of the provisions of this Agreement is held to be invalid or otherwise unenforceable, the enforceability of the remaining provisions shall be unimpaired and enforced to the full extent.

c. Relationship of the Parties. Neither this Agreement nor the parties' business relationship established hereunder will be construed as a partnership, joint venture or as granting a franchise. Access shall be Novel's agent for the purpose of credit insurance and banking relationships established pursuant to this agreement.

d. Non-Exclusive. Access and Novel each acknowledge and agree that the rights granted to each other in this Agreement are granted on a non-exclusive basis, and that nothing in this Agreement prevents either party from entering into similar agreements with third parties at the sole discretion of each party.

e. Choice of Law. This Agreement shall be governed by and construed in accordance with the law of the State of New Jersey, excluding its conflicts of law rules. The parties consent to the federal and state courts of the State of New Jersey having exclusive jurisdiction over them. The parties consent to service of process by certified or registered mail, return receipt requested.

f. Entire Agreement. This Agreement and any mutually executed Statement of Work entered into hereunder, constitute the entire agreement between the parties with respect to the subject matter hereof and thereof and supersede and merge all prior proposals, understandings and agreements, oral or written, between the parties relating to the subject matter hereof. To the extent of a conflict between this Agreement and any Statement of Work, the terms of this Agreement shall prevail. No modification, amendment, supplements to or waiver of this Agreement shall be binding upon the parties unless made in writing and duly signed by both parties hereto.

g. Counterparts. This Agreement may be executed in one or more counterparts, each of which shall constitute an original and all of which taken together shall constitute one and the same Agreement. The parties may sign facsimile copies of this Agreement which shall each be deemed originals.

Agreed to as of the date set forth in the first paragraph hereof.

ACCESS GLOBAL CAPITAL LLC
By: [signature]
Besch, Managing Member

Access Global Capital LLC
#8 Old Clinton Rd
Lebanon, New Jersey 08833
[signature]
James Besch
President & CEO

NOVEL COMMODITIES S.A.
By: FLORIAN CERGNEUX

NOVEL COMMODITIES S.A.
BY: FRANCOIS GOUVERNE
[signature]

GA 00006

# TRIAL EXHIBIT DD

**YESKOO HOGAN & TAMLYN, LLP**

A NEW YORK LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
139 SOUTH STREET
NEW PROVIDENCE, NEW JERSEY 07974
TEL: (908) 464-6300
FAX: (908) 464-2828

RICHARD C. YESKOO[1]
STEPHEN HOGAN[2]
THOMAS T. TAMLYN[2]

[1]MEMBER N.J. & N.Y. BAR
[2]MEMBER N.Y. BAR

NEW YORK OFFICE
909 THIRD AVENUE, 28TH FLOOR
NEW YORK, NY 10022
(212) [illegible]

April 11, 2013

<u>By Certified Mail, Return Receipt Requested</u>

Michael A. Knoerzer
Clyde & Co. US LLP
405 Lexington Avenue
New York, NY 10174

Re: <u>Access Global Capital, LLC/QBE Insurance</u>

Dear Mr. Knoerzer:

Our firm represents Access Global Capital, LLC ("Access"). Access is the insured of your client, QBE Insurance Corporation ("QBE"), under policy number DC/8800281/AE. We understand that this policy is currently subject to litigation in the United States District Court for the Southern District of New York in case number 1:11-cv-6339 (PGG).

Please be advised that Access is entitled to certain proceeds of such policy, specifically including the premium, which it advanced. Access demands that all proceeds of the policy, whether paid by settlement or final judgment, be paid to it as the insured.

Yours truly,

Richard C. Yeskoo

cc: Karen Abravanel

EXHIBIT
DD