

The Chrysler Building
405 Lexington Avenue
New York, New York 10174
Telephone: 212 710 3900
Facsimile: 212 710 3950
www.clydeco.us
Stephen.Kennedy@clydeco.us

November 22, 2013

**BY ECF AND HAND DELIVERY**

Hon. Paul G. Gardephe
United States District Judge
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

**Re: Novel Commodities S.A. v. QBE Insurance Corporation (Index No. 11-CV-6339)**

Dear Judge Gardephe:

We represent Defendant QBE Insurance Corporation ("QBE") in the above-referenced action. We write in reply to Novel's letter of Wednesday, November 20, 2013 (Dkt. No. 109) opposing QBE's application for leave to pursue an interpleader action against Defendant Novel Commodities S.A. ("Novel") and its agent, Access Global Capital, LLC ("Access Global"). We also write in response to the letters written by Access Global's counsel to Your Honor dated November 20, 2013 and today and to Novel's letter of yesterday. (Dkt. No. 110).

**1. Novel's November 20, 2013 Letter**

Contrary to Novel's contention, Access Global's claim is plainly adverse to Novel's claim in this matter. Indeed, in stark contrast to Novel's assertion that Access Global never said that it was an insured under the Policy in addition to Novel, Access Global's principal, James Besch, testified at trial:

Q: Is Novel the insured under the policy?
A: Yes.
Q: So –
A: And I am, as well. I believe I'm named as insured, as well.

(Dkt. No. 109 at Ex. D, 237:4-8).

Clyde & Co US LLP is a Delaware limited liability partnership with offices in New York, San Francisco and New Jersey.
Clyde & Co US LLP is affiliated with Clyde & Co LLP, a limited liability partnership registered in England and Wales that practices from branch and affiliate* offices in: Abu Dhabi, Bangalore*, Belgrade*, Caracas, Dar es Salaam, Doha, Dubai, Guildford, Hong Kong, London, Moscow, Mumbai*, Nantes, Paris, Piraeus, Rio de Janeiro, Riyadh*, Shanghai, Singapore and St. Petersburg*





Moreover, Mr. Besch testified that Access Global's claim against Novel arose not only from Access Global's status as an additional insured under the Policy, but also because Novel promised under its Agency Agreement with Access Global to indemnify and hold Access Global harmless for "any and all losses, claims, damages or liabilities to which Access may become subject arising in any manner out of or in connection with the rendering of services by Access hereunder [which included the purchase of trade credit insurance]." (Trial Ex. 14 at ¶ 3). As discussed below, Access Global in a letter to this Court dated today re-affirmed its right to payment from Novel under the Agency Agreement. (Exhibit 1).

Tellingly, in its November 20th letter to Your Honor, Novel avoids addressing the Agency Agreement and its duty to indemnify Access Global under that agreement. Instead, Novel suggests that QBE may not cite to the Agency Agreement because it was not introduced at trial and the Agency Agreement is somehow questionable because it post-dates Policy inception. Novel's Letter at 3 n.3. These suggestions are meritless. Importantly, Novel does not deny that the Agency Agreement memorializes its promise to indemnify Access Global in relation to its procurement of the Policy. This is unsurprising given the fact that the agreement was pre-marked by Novel as a trial exhibit and was made part of the record, without challenge by Novel, as Exhibit 5 to QBE's Motion for Summary Judgment (*See* Dkt. No. 33-5).

In short, given Novel's obligation to indemnify Access Global under the Agency Agreement and Access Global's demands against Novel for payment of the Policy premium (Novel does not deny that Access Global paid the premium), Novel's argument that Access Global's claim to the Policy proceeds is "redundant" to Novel's claim, and was made by Access Global only as a representative of Novel, is demonstrably wrong. It is also clear from the record in this case and the authorities cited by QBE in its November 18, 2013 letter that Access Global's claim for the Policy proceeds is sufficiently "colorable" to support QBE's interpleader request.

With respect to Novel's laches defense, it necessarily fails because Novel cannot show that: (1) QBE inexcusably delayed bringing an interpleader action; or (2) that it was prejudiced. Contrary to Novel's argument, the *John Hancock* and *Mendez* cases do not provide any support whatsoever for its argument that QBE is guilty of undue delay. In fact, those cases establish that QBE's request to interplead was timely made. In both *John Hancock* and *Mendez*, the Court ruled that the stakeholder was estopped from bringing an interpleader action because it delayed doing so until *after its obligation to pay was fixed*. *John Hancock Mutual Life Ins. Co. v. Doran*, 138 F. Supp. 47, 49 (S.D.N.Y. 1956) (finding delay unreasonable where insurer's obligation to pay was clear from the unambiguous terms of the policy); [1] *Mendez v. Teachers Ins. and Annuity Assoc. and College Retirement Equities Fund*, 982 F.2d 783 (2d Cir. 1992) (finding delay unreasonable where stakeholder's obligation to pay was not in dispute).

---

[1] It bears mentioning that the *John Hancock* court found that the appropriate remedy where an insurance company had engaged in less than "grossly culpable delay" in bringing an interpleader was not dismissal of the interpleader complaint, but rather an award of interest on the fund in dispute. 138 F. Supp. at 49.





Here, in contrast to the *John Hancock* and *Mendez* cases, QBE's obligation to pay under the Policy was not *fixed* until only recently when this Court denied QBE's Rule 50(b) motion by order dated October 28, 2013 (the "October 28th Order" or "Order") and QBE decided not to appeal the Order. Moreover, within six business days of the October 28th Order, QBE moved swiftly to pay the Judgment Amount into Court and within two weeks of the Order sought, in good faith, to involve all known creditors of Novel, including Access Global, in the resolution of all competing claims to the Judgment Amount. (*See* Exhibit 2). Under these facts, Novel's argument that QBE unduly delayed its request to interplead the Judgment Amount has absolutely no merit.

Furthermore, in arguing laches, Novel has also failed to show that it has or will suffer any real prejudice. Indeed, beyond a conclusory statement that it has suffered "grievous injury," Novel has not explained specifically how or why it has been harmed by QBE's request to interplead. Contrary to Novel's suggestion, it is Access Global, not QBE, that has asserted a claim against Novel and, to the extent Access Global's claim is colorable (which it appears to be), Novel is not entitled now to payment by QBE of that portion of the Judgment Amount it seeks in the stipulation submitted to the Court on Friday, November 15, 2013. Instead, consistent with federal interpleader law, QBE should be permitted to deposit that portion of the Judgment Amount into the Court so that QBE may be relieved of any further risk and cost of litigation. As between Novel and QBE, Novel should be the party that bears the risk and cost of future litigation with the entity (Access Global) that Novel hand-picked to procure the Policy on its behalf. And, if Access Global's claims are not valid, as Novel has repeatedly asserted, then it should easily and quickly be able to demonstrate its right to the funds deposited by QBE.[2]

Novel's unclean hands argument also has no merit. As the *William Penn* case relied upon by Novel holds, the doctrine of unclean hands will bar interpleader only when "'the party applying for such relief is guilty of conduct involving fraud, deceit, unconscionability or bad faith related to the matter at issue to the detriment of the other party.'" *William Penn Life Ins. Co. v. Viscuso*, 569 F. Supp. 2d 355, 362 (S.D.N.Y. 2008) (quotations omitted). Here, Novel has not even argued, let alone demonstrated, that QBE engaged in unconscionable conduct or fraud. For good reason, because as discussed above, the record shows that QBE has attempted to resolve all competing claims against Novel and the Judgment Amount in good faith and with reasonable promptness.

Finally, Novel's contention that QBE will suffer no prejudice if the Court denies its application for interpleader is wrong. As noted, QBE currently faces – and will continue to face – the risk and high costs of continued litigation, even though its liability in this case has already

---

[2] Given that Novel claims entitlement to approximately $3.9 million of the Judgment Amount, its suggestion that it may not be able to secure legal representation to address Access Global's claim if QBE deposits the funds into Court is not plausible.





been determined and it is trying, in good faith, to fully and finally discharge its obligations to pay the Judgment Amount.

**2. Access Global's November 20, 2013 and November 22, 2013 Letters and Novel's November 21, 2013 Letter**

As Your Honor is aware, by letter dated November 20, 2013, Access Global's counsel advised this Court of its claim against Novel for premium it paid under the Policy and for other insurance coverage it obtained on behalf of Novel. Access Global also advised that Novel had agreed (apparently on more than one occasion) that Access Global could reimburse itself for the premium from policy proceeds if Covadonga failed to pay it. Access Global now values its claim against Novel to be $862,190 plus interest from March 2010. Using a simple interest rate of 9%, Access Global's claim is currently worth approximately $1,151,531.

In response to Access Global's letter, Novel wrote Your Honor yesterday, November 21, contending that any claim by Access Global that Novel orally agreed to pay policy proceeds is barred by the statute of frauds (Novel does not deny that it made those promises). (Dkt. No. 110). Access Global has refuted Novel's statute of frauds argument in a letter sent to Your Honor today in which it stated that Novel's promise to indemnify Access Global was memorialized in the parties' Agency Agreement. (Exhibit 1).

QBE respectfully submits that, under the governing interpleader standards, it should not have to shoulder the burden of assessing the merits of Access Global's claim and Novel's defenses to that claim or to assume the costs and risks of future litigation. QBE, therefore, respectfully requests that this Court grant QBE leave to commence an interpleader action so that it may deposit into the Court registry that portion of the Judgment Amount to cover Access Global's claim.

Respectfully submitted,

Stephen M. Kennedy /VLM

Stephen M. Kennedy

cc: Michael T. Sullivan, Esq. (via ECF)
Karen E. Abravanel, Esq. (via ECF)
Richard Yeskoo, Esq. (via email)

# EXHIBIT 1

YESKOO HOGAN & TAMLYN, LLP
A NEW YORK LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
139 SOUTH STREET
NEW PROVIDENCE, NEW JERSEY 07974
TEL: (908) 464-8300
FAX: (908) 464-2828

RICHARD C. YESKOO[1]
STEPHEN HOGAN[2]
THOMAS T. TAMLYN[2]

[1]MEMBER N.J. & N.Y. BAR
[2]MEMBER N.Y. BAR

NEW YORK OFFICE
909 THIRD AVENUE, 28TH FLOOR
NEW YORK, NY 10022
(212) 983-0900

November 22, 2013

By Telecopier (212-805-7986) and
Federal Express

Hon. Paul G. Gardephe
United States District Court
Southern District of New York
40 Foley Square, Room 2204
New York, NY 10007

Re: Novel Commodities SA v. QBE Insurance Corp.
11-cv-6339 (PGG)

Dear Judge Gardephe:

We represent Access Global Capital, LLC ("Access"). We respectfully request that you consider this brief letter in response to Novel's November 21, 2103 letter which falsely maintains that Access's claims against Novel are barred by the statute of limitations.

Annexed hereto as Exhibit 1 is the written agency agreement between Novel and Access. Novel engaged Access "for the purpose of arranging for", among other things, "credit insurance" for Novel and its clients. Paragraph 1. The agreement further provides that Novel shall indemnify Access for any "losses" which Access "may become subject arising in any manner out of or in connection with the rendering of services by Access hereunder." Paragraph 4. Here, Access advanced the credit insurance premiums at Novel's direction. In the agreement, Novel agreed to reimburse such premiums to Access if Covadonga did not pay for them, because the failure to recover the premiums from Covadonga would create a loss to Access. The statute of frauds is therefore inapplicable to Access's claim against Novel.

Respectfully submitted,

Richard C. Yeskoo

cc: Michael Sullivan (by email)
Stephen Kennedy (by email)

# Exhibit 1




## AGREEMENT

This agreement (the "Agreement") made as of June 8, 2010 will confirm the prior understanding and agreement between Novel Commodities SA, 4-6 Avenue Industrielle, 1227, Carouge, Switzerland ("Novel") and Access Global Capital LLC, 8 Old Clinton Road, Lebanon, New Jersey, United States of America ("Access" or the "Company").

1. Novel has engaged Access as a financial consultant for the purpose of arranging for bank lines of credit, credit insurance, project finance and capital investment in Novel and its clients. Credit Insurance booked on behalf of Novel by Acceess Global Capital will be administration by the latter in strict conformity of the policy terms but always in coordination with Novel and as per their instructions. Any actions taken to be pre-agreed with Novel and no changes nor amendments to the policy (ies ) can be done without written consent of Novel or funding source to whom such policy (ies ) might be assigned as loss payee or co-insured.

2. Access's minimum fee for assisting in transactions will be 83 basis points (0.83%) of the value of each transaction, or as otherwise agreed in writing among the parties.

3. This Agreement may be terminated by either party upon 60 days written notice. This Agreement will remain in effect for any transactions in process as of the time of notice of cancellation. In addition, paragraphs 4 through 7 of this Agreement shall survive the termination of this Agreement.

4. Novel shall indemnify Access and its members (the "Indemnitees") and hold it harmless against any and all losses, claims, damages or liabilities to which Access may become subject arising in any manner out of or in connection with the rendering of services by Access hereunder or the rendering of additional services by Access as requested by Novel that are related to the services rendered hereunder, unless it is finally judicially determined that such losses, claims, damages or liabilities resulted directly from gross negligence or willful misconduct of Access. If an Indemnitee seeks indemnification under this Agreement, the Indemnitee will: (i) give notice to Novel concerning the existence of the indemnifiable event; (ii) grant authority to Novel to defend or settle any related action or claim; and, (iii) provide, at Novel's expense, such information, cooperation and assistance to Novel as may be reasonably necessary for Novel to defend or settle the claim or action. An Indemnitee's failure to give notice shall not constitute a waiver of the Indemnitee's right to indemnification and shall affect Novel's indemnification obligations only to the extent that Novel's rights are materially prejudiced by such failure or delay. Notwithstanding anything to the contrary set forth

Access Global Capital LLC
8 Old Clinton Rd
Lebanon New Jersey 08833

herein, (i) an Indemnitee may participate, at its own expense, in any defense and settlement directly or through counsel of its choice, and (ii) Novel will not enter into any settlement agreement on terms that would diminish the rights provided to the Indemnitee or increase the obligations assumed by the Indemnitee under this Agreement, without the prior written consent of the Indemnitee. If Novel elects not to defend any claim as is required under this Agreement, the Indemnitee will have the right to defend or settle the claim as it may deem appropriate, at the cost and expense of Novel, and Novel will promptly reimburse the Indemnitee for all costs, expenses, settlement amounts and other Damages.

5. Each party expects to disclose certain non-public, confidential information regarding, among other things, investment policies, practices and clients (together the "Confidential Information") to the other. The parties each agree for a period of four (4) years from disclosure not to use Confidential Information for any purpose other than in connection with the transactions contemplated by this Agreement. The Confidential Information may be disclosed to the parties' and its affiliates' responsible employees, auditors, consultants, refinancing institutions, insurance brokers or insurance companies with a bona fide need to know. The parties agree to instruct (either as part of their normal operations and procedures or otherwise) all such employees, auditors, consultants, refinancing institutions, insurance brokers or insurance companies not to disclose such Confidential Information to third parties without the prior permission of the other party unless such disclosure is otherwise permitted herein.

Notwithstanding the above, neither party shall be prohibited from using or disclosing Confidential Information which (i) is or becomes generally available to the public other than as a result of unauthorized disclosure, (ii) was within its possession prior to its disclosure by the other party, (iii) becomes available to it on a non-confidential basis after the date hereof from any third party which is not bound by a confidentiality agreement, or (iv) is required to be disclosed by law or judicial order, provided that the party shall promptly notify the other party of such requirement so that the other party may seek an appropriate protective order or otherwise seek to protect the confidentiality of such Confidential Information. In addition, Novel agrees that Access may provide services to AgroIndustrias Covadonga C.V., CIA Arrocera Covadonga, S.A. de C.V., Mercoe for its own account.

6. Novel agrees that it will not either directly or indirectly circumvent Access to deal directly with an investment, banking, credit insurance or client source for a period of four (4) years from the later of the termination of this Agreement or the end of services to a client of Access. This non-circumvention agreement applies to indirect attempts to circumvent Access, such as through affiliates, third parties, employees, and shareholders. This list of possible means of circumvention is not exhaustive. In the event that it is determined that Access was circumvented, Access shall be entitled to recover from you the fees it would have earned from the plus five percent (5%) of all funds or other consideration directly or indirectly financed, together with interest and its attorneys fees, disbursements and costs.

Access Global Capital
#8 Old Clinton Rd
Lebanon, New Jersey 08833
James Beach
President & CEO

7. Miscellaneous provisions.

a. Waiver. No failure or delay by either party in exercising any right, power or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any other right, power or privilege hereunder.

b. Severability. In the event any one or more of the provisions of this Agreement is held to be invalid or otherwise unenforceable, the enforceability of the remaining provisions shall be unimpaired and enforced to the full extent.

c. Relationship of the Parties. Neither this Agreement nor the parties' business relationship established hereunder will be construed as a partnership, joint venture or as granting a franchise. Access shall be Novel's agent for the purpose of credit insurance and banking relationships established pursuant to this agreement.

d. Non-Exclusive. Access and Novel each acknowledge and agree that the rights granted to each other in this Agreement are granted on a non-exclusive basis, and that nothing in this Agreement prevents either party from entering into similar agreements with third parties at the sole discretion of each party.

e. Choice of Law. This Agreement shall be governed by and construed in accordance with the law of the State of New Jersey, excluding its conflicts of law rules. The parties consent to the federal and state courts of the State of New Jersey having exclusive jurisdiction over them. The parties consent to service of process by certified or registered mail, return receipt requested.

f. Entire Agreement. This Agreement and any mutually executed Statement of Work entered into hereunder, constitute the entire agreement between the parties with respect to the subject matter hereof and thereof and supersede and merge all prior proposals, understandings and agreements, oral or written, between the parties relating to the subject matter hereof. To the extent of a conflict between this Agreement and any Statement of Work, the terms of this Agreement shall prevail. No modification, amendment, supplements to or waiver of this Agreement shall be binding upon the parties unless made in writing and duly signed by both parties hereto.

g. Counterparts. This Agreement may be executed in one or more counterparts, each of which shall constitute an original and all of which taken together shall constitute one and the same Agreement. The parties may sign facsimile copies of this Agreement which shall each be deemed originals.

Agreed to as of the date set forth in the first paragraph hereof.

ACCESS GLOBAL CAPITAL LLC
By: ____________
Besch, Managing Member

Access Global Capital LLC
#8 Old Clinton Rd.
Lebanon, New Jersey 08833
James Besch
President & CEO

NOVEL COMMODITIES S.A.
By: FLORIAN CERGNEUX

NOVEL COMMODITIES S.A.

BY: FRANK GOUVERNE



# EXHIBIT 2

**From:** Sullivan, Michael [mailto:msullivan@sandw.com]
**Sent:** Thursday, November 14, 2013 12:14 PM
**To:** Kennedy, Stephen
**Cc:** 'Kevin Lennon'; 'gutowski@freehill.com'; Ed Floyd; Alan Van Praag; Melcher, Victoria
**Subject:** RE: Novel

Steve,

Novel is not prepared to seek any third party's permission or consent at this late hour. There is simply no good faith basis for QBE to require Access's approval of the agreed—and legally mandated—arrangements or to rely on Mr. Yeskoo's April 11, 2013 letter to delay. To this end, I note:

1. Novel, not Access sued QBE. QBE made no attempt to join Access in that action, even after Mr. Yeskoo's letter dated April 11, 2013.
2. The Judgment is in the name of Novel only.
3. Unlike Polish Steamship and Wind Shipping, Access has not sought judicial assistance, and has not obtained an order of attachment.
4. Access had no claim to the policy. QBE's policy sets out Access's limited role in the Declarations and on each of the endorsements. There QBE stated that Access acts *"for the account of Novel Commodities S.A."* (Italics in the original). QBE has long acknowledged Access limited role. Again, I note that QBE never sought to involve Access in the action.
5. The trial testimony of Access's principal, James Besch, made clear that the Policy was not the basis of Mr. Yeskoo's letter and the assertions contained therein. Rather, he Mr. Besch testified to an allege agreement between him and Covadonga respecting policy premium.

I hope we are now moving forward.

Regards,

**From:** Kennedy, Stephen [mailto:Stephen.Kennedy@clydeco.us]
**Sent:** Thursday, November 14, 2013 11:28 AM
**To:** Sullivan, Michael
**Cc:** 'Kevin Lennon'; 'gutowski@freehill.com'; Ed Floyd; Alan Van Praag; Melcher, Victoria
**Subject:** RE: Novel

Michael,

QBE is only asking for Novel's good faith attempt to secure the release of its agent Access Global. We look forward to hearing from you in that regard.

Regards,

**Stephen Kennedy**
Partner | Clyde & Co US LLP
**Direct Dial:** +1 212 710 3935 | **Mobile:** +1 347 244 3529



The Chrysler Building | 405 Lexington Avenue | 16th Floor | New York | NY 10174 | USA
**Main** +1 212 710 3900 | **Fax** +1 212 710 3950 | **www.clydeco.us**

---

**From:** Sullivan, Michael [mailto:msullivan@sandw.com]
**Sent:** Thursday, November 14, 2013 11:25 AM
**To:** Kennedy, Stephen
**Cc:** 'Kevin Lennon'; 'gutowski@freehill.com'; Ed Floyd; Alan Van Praag; Melcher, Victoria
**Subject:** RE: Novel

Stephen,

QBE, of course, is free to seek releases from any all persons it desires. But, such desires and any time required to satisfy those desires, may not properly be used to delay QBE's satisfaction of the judgment and attachments.

Regards,

---

**From:** Kennedy, Stephen [mailto:Stephen.Kennedy@clydeco.us]
**Sent:** Thursday, November 14, 2013 11:17 AM
**To:** Sullivan, Michael; 'Kevin Lennon'
**Cc:** 'gutowski@freehill.com'; Ed Floyd; Alan Van Praag; Melcher, Victoria
**Subject:** RE: Novel

Michael,

Thank you for your email. QBE would like a full release from Novel and its agent Access Global. Since the claim does not appear to concern Novel, we are hopeful Novel will have no issue with seeking Access Global consent to the stipulation.

Regards,
**Stephen Kennedy**
Partner | Clyde & Co US LLP
**Direct Dial:** +1 212 710 3935 | **Mobile:** +1 347 244 3529



The Chrysler Building | 405 Lexington Avenue | 16th Floor | New York | NY 10174 | USA
**Main** +1 212 710 3900 | **Fax** +1 212 710 3950 | **www.clydeco.us**

---

**From:** Sullivan, Michael [mailto:msullivan@sandw.com]
**Sent:** Thursday, November 14, 2013 10:41 AM
**To:** Kennedy, Stephen; 'Kevin Lennon'
**Cc:** 'gutowski@freehill.com'; Ed Floyd; Alan Van Praag; Melcher, Victoria
**Subject:** RE: Novel

Stephen,

As explained to Victoria last night, while I am seeking instructions from Novel on the issue QBE has just interjected, there is no basis for requiring any participation by Access. The letter sent by Access's counsel in April/May of this year does not establish a cognizable "claim" against the policy; but, more significant, it does not establish a legal claim or lien against the judgment.

Regards,

---

**From:** Kennedy, Stephen [mailto:Stephen.Kennedy@clydeco.us]
**Sent:** Thursday, November 14, 2013 10:16 AM
**To:** 'Kevin Lennon'
**Cc:** 'gutowski@freehill.com'; Sullivan, Michael; Ed Floyd; Alan Van Praag; Melcher, Victoria
**Subject:** Novel

Kevin,

Attached are revisions that we have made to the stipulation that appear in Track Changes. The most significant change is making the releases in favor of QBE effective immediately upon each interested party's receipt of funds and placing the releases in the "so ordered" section of the stipulation. We have also added another interested party, Novel's agent, Access Global, which has made a claim against the policy proceeds.

We have not yet had a chance to discuss all of these changes with QBE so they are subject to further comment/revision. We wanted, however, to circulate them as soon as possible so that we may finalize the papers by tomorrow, thereby avoiding a court conference ordered by Judge Gardephe tomorrow afternoon.

Regards,

Steve

**Stephen Kennedy**
Partner | Clyde & Co US LLP
**Direct Dial:** +1 212 710 3935 | **Mobile:** +1 347 244 3529

The Chrysler Building | 405 Lexington Avenue | 16th Floor | New York | NY 10174 | USA
**Main** +1 212 710 3900 | **Fax** +1 212 710 3950 | www.clydeco.us

ALERT: Do international trade sanctions affect your business? http://sanctions.clydeco.com

November 2013: Clyde & Co follows Shanghai and Beijing offices with Chongqing joint law venture

This email message and any attachments may contain legally privileged and/or confidential information intended solely for the use of the individual or entity to whom it is addressed. If the reader of this message is not the intended recipient, you are hereby notified that any reading, dissemination, distribution or copying of this message or its attachments is strictly prohibited. If you have received this email message in error, please immediately notify us by telephone, fax or email and delete the message and all attachments thereto. Thank you. Clyde & Co US LLP is a Delaware limited liability law partnership affiliated with Clyde & Co LLP, a multinational partnership regulated by The Law Society of England and Wales. Clyde & Co LLP has merged with Barlow Lyde & Gilbert LLP.

Disclosure: To ensure compliance with requirements imposed by the IRS in Circular 230, we inform you that any tax advice contained in this communication (including any attachment that does not explicitly state otherwise) is not intended or written to be used, and cannot be used, for the purpose of avoiding penalties under the Internal Revenue Code or promoting, marketing or recommending to another party any transaction or matter addressed herein.

This message is intended to be confidential and may be legally privileged. It is intended solely for the addressee. If you are not the intended recipient, please delete this message from your system and notify us immediately. Any disclosure, copying,

distribution or action taken or omitted to be taken by an unintended recipient in reliance on this message is prohibited and may be unlawful.

Communications from our firm may contain or incorporate federal tax advice. Under US Internal Revenue Service (IRS) standards, we are required to inform you that only formal, written tax opinions meeting IRS requirements may be relied upon by taxpayers for the purpose of avoiding tax-related penalties. Accordingly, this communication is not intended or written to be used, and it cannot be used, for the purpose of avoiding tax-related penalties under the Internal Revenue Code. Please contact a member of our law firm's Tax Department if you require a formal, written tax opinion that satisfies applicable IRS requirements, or if you have any other questions regarding federal tax advice.

ALERT: Do international trade sanctions affect your business? http://sanctions.clydeco.com

November 2013: Clyde & Co follows Shanghai and Beijing offices with Chongqing joint law venture

This email message and any attachments may contain legally privileged and/or confidential information intended solely for the use of the individual or entity to whom it is addressed. If the reader of this message is not the intended recipient, you are hereby notified that any reading, dissemination, distribution or copying of this message or its attachments is strictly prohibited. If you have received this email message in error, please immediately notify us by telephone, fax or email and delete the message and all attachments thereto. Thank you. Clyde & Co US LLP is a Delaware limited liability law partnership affiliated with Clyde & Co LLP, a multinational partnership regulated by The Law Society of England and Wales. Clyde & Co LLP has merged with Barlow Lyde & Gilbert LLP.

Disclosure: To ensure compliance with requirements imposed by the IRS in Circular 230, we inform you that any tax advice contained in this communication (including any attachment that does not explicitly state otherwise) is not intended or written to be used, and cannot be used, for the purpose of avoiding penalties under the Internal Revenue Code or promoting, marketing or recommending to another party any transaction or matter addressed herein.

This message is intended to be confidential and may be legally privileged. It is intended solely for the addressee. If you are not the intended recipient, please delete this message from your system and notify us immediately. Any disclosure, copying, distribution or action taken or omitted to be taken by an unintended recipient in reliance on this message is prohibited and may be unlawful.

Communications from our firm may contain or incorporate federal tax advice. Under US Internal Revenue Service (IRS) standards, we are required to inform you that only formal, written tax opinions meeting IRS requirements may be relied upon by taxpayers for the purpose of avoiding tax-related penalties. Accordingly, this communication is not intended or written to be used, and it cannot be used, for the purpose of avoiding tax-related penalties under the Internal Revenue Code. Please contact a member of our law firm's Tax Department if you require a formal, written tax opinion that satisfies applicable IRS requirements, or if you have any other questions regarding federal tax advice.

ALERT: Do international trade sanctions affect your business? http://sanctions.clydeco.com

November 2013: Clyde & Co follows Shanghai and Beijing offices with Chongqing joint law venture

This email message and any attachments may contain legally privileged and/or confidential information intended solely for the use of the individual or entity to whom it is addressed. If the reader of this message is not the intended recipient, you are hereby notified that any reading, dissemination, distribution or copying of this message or its attachments is strictly prohibited. If you have received this email message in error, please immediately notify us by telephone, fax or email and delete the message and all attachments thereto. Thank you. Clyde & Co US LLP is a Delaware limited liability law partnership affiliated with Clyde & Co LLP, a multinational partnership regulated by The Law Society of England and Wales. Clyde & Co LLP has merged with Barlow Lyde & Gilbert LLP.

Disclosure: To ensure compliance with requirements imposed by the IRS in Circular 230, we inform you that any tax advice contained in this communication (including any attachment that does not

explicitly state otherwise) is not intended or written to be used, and cannot be used, for the purpose of avoiding penalties under the Internal Revenue Code or promoting, marketing or recommending to another party any transaction or matter addressed herein.

This message is intended to be confidential and may be legally privileged. It is intended solely for the addressee. If you are not the intended recipient, please delete this message from your system and notify us immediately. Any disclosure, copying, distribution or action taken or omitted to be taken by an unintended recipient in reliance on this message is prohibited and may be unlawful.

Communications from our firm may contain or incorporate federal tax advice. Under US Internal Revenue Service (IRS) standards, we are required to inform you that only formal, written tax opinions meeting IRS requirements may be relied upon by taxpayers for the purpose of avoiding tax-related penalties. Accordingly, this communication is not intended or written to be used, and it cannot be used, for the purpose of avoiding tax-related penalties under the Internal Revenue Code. Please contact a member of our law firm's Tax Department if you require a formal, written tax opinion that satisfies applicable IRS requirements, or if you have any other questions regarding federal tax advice.